No. 95-235

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

KATHRYN PIKE,

     Plaintiff/Appellant,

  v.

BURLINGTON NORTHERN RAILROAD COMPANY,

     Defendant/Respondent.

FILED

SEP 29 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

       Elizabeth A. Best, Best Law Offices, Great Falls,
Montana

    For Respondent:

       Jeff Hedger, Kroschel & Yerger, Billings, Montana

Submitted on Briefs:  August 24, 1995

Decided:  September 29, 1995

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Kathryn Pike (Pike) appeals from the March 9, 1995 order of the Twelfth Judicial District Court, Hill County, granting Burlington Northern Railroad's (BN) motion under Rule 12(b)(1), M.R.Civ.P., and dismissing her complaint for lack of subject matter jurisdiction. We reverse and remand for further proceedings consistent with this opinion.

The sole issue to be decided in this appeal is whether Pike's state law and federal claims of sex discrimination are preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151, et. seq.?

### Background

Pike was employed as a carman at BN's diesel shop from May 1977, until August 10, 1992. The Brotherhood Railway Carmen's Division, Transportation Communications International Union (the Union) and BN were parties to a collective bargaining agreement which was in force at the time of the events alleged in Pike's complaint. She was a member of the Union.

Pike claims her employment was wrongfully terminated on August 10, 1992. She alleges that when BN closed its Havre diesel shop, the five carmen who were employed were given an option to transfer to other locations or to exercise their seniority in the Montana district. Pike, apparently the only female carman, contends she had been advised she would not be placed in a carman position because she was not qualified to operate an all terrain vehicle. Pike alleges that this reason was merely a pretext and that she was actually denied her position and terminated because of her gender

2

in violation of the provisions of the Montana Human Rights Act, §§ 49-1-102, MCA, et. seq., and Title VII, 42 U.S.C. §§ 2000(e), et. seq.

In dismissing her complaint, the District Court ruled that Pike's dispute with BN fit within the definition of a "minor" dispute under the RLA, 45 U.S.C. § 151, et. seq. Relying principally on Consolidated Rail Corp. v. Railway Labor Executives' Ass'n (1989), 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250, the District Court determined that Pike's was a "minor" dispute because it did not seek to create contractual rights but to enforce them; it concerned the interpretation or application of a collective bargaining agreement; and it was inextricably intertwined with the grievance machinery of the collective bargaining agreement or the RLA.

Having made that determination, the court, again relying on Conrail, concluded Pike's discrimination claims were subject to the exclusive jurisdiction of the National Railroad Adjustment Board (NRAB) and the court's subject matter jurisdiction over her claims was preempted by the RLA. It is from this decision that Pike appeals.

### Standard of Review

The District Court concluded, as a matter of law, it did not have subject matter jurisdiction over Pike's sex discrimination claims. Our review of the legal conclusions of a trial court is plenary; we simply determine whether the court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990),

3

245 Mont. 470, 474-75, 803 P.2d 601, 603. In this case, we hold that the District Court erred in its legal conclusion that it did not have subject matter jurisdiction over Pike's state law and federal sex discrimination claims.

## Issue

Did the District Court err in determining that Pike's state law and federal claims of sex discrimination are preempted by RLA, 45 U.S.C. § 151, et. seq.?

## Discussion

BN argues that the District Court correctly categorized Pike's discrimination claims as falling within the definition of a "minor" dispute, and thus, subject to the mandatory and exclusive arbitration procedures of the RLA. While BN does not dispute Pike's right to make a substantive statutory discrimination claim under Title VII, it argues that her claim is, nevertheless, a "minor" dispute over which the court has no subject matter jurisdiction. Moreover, BN maintains that Pike is substantively preempted from pursuing her state law claim even in arbitration because those claims are "inextricably intertwined with the express and implied provisions of the collective bargaining agreement. . . [and]. . . [s]he must pursue the [state law] claim under the substantive provisions of the [collective bargaining agreement] and the RLA or Title VII."

Pike, on the other hand, maintains the RLA does not preempt claims for unlawful discrimination, and because her right to be free from unlawful discrimination derives from statute, that right

4

cannot be bargained away as part of a collective bargaining agreement. Pike also argues that, under the District Court's analysis, an unlawful discrimination claim cannot be classified as either a "minor" or a "major" dispute, in any event, and that since her claims derive from statute, as opposed to contract, her state law claim is not preempted by the RLA.

Since the District Court determined that Pike's claims were preempted by the RLA, it is instructive to commence our resolution of the issue in dispute with a brief discussion of that Act and the interpretative case law. Congress' purpose in enacting the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. Hawaiian Airlines, Inc., v. Norris (1994) ___ U.S. ___, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203, ___ (citing Atchison, T. & S.F.R. Co. v. Buell (1987), 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563, 571 and 45 U.S.C. § 151a.) There are two classes of disputes distinguished in the RLA. The first class of disputes are deemed "major" disputes and arise "out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions." Atchison, 480 U.S. at 562-63 (quoting Detroit & T.S.L.R. Co. v. Transportation Union (1969), 396 U.S. 142, 145 n. 5, 90 S.Ct. 294, 296 n.5, 24 L.Ed.2d 325, 329 n.5). The second class of disputes, "minor" disputes, are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Atchison, 480 U.S. at 563. "Major" disputes seek to create

5

contractual rights, while "minor" disputes seek to enforce them. Conrail, 491 U.S. at 302 (citing Elgin, J. & E.R. Co. v. Burley (1945), 325 U.S. 711, 723, 65 S.Ct. 1282, 1289-90, 89 L.Ed. 1886, 1894).

A "minor" dispute, which is how the District Court characterized Pike's claims, must be dealt with through the railroad's internal dispute resolution processes. If not settled there, then it must be settled through compulsory and binding arbitration under the exclusive jurisdiction of NRAB or before an adjustment board established by the employer and the union representing the employee. Conrail, 491 U.S. at 303-304. Judicial review of the arbitration decision is extremely narrow. Union Pacific R. Co. v. Sheehan (1978), 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354, 357.

Accordingly, if Pike's sex discrimination claims are properly categorized as a "minor" dispute, and thus subject to the mandatory arbitration provisions of the RLA, then the District Court was correct in its conclusion that it did not have subject matter jurisdiction over her lawsuit. However, our review of federal case authority, and most recently, the United States Supreme Court's decision in Hawaiian Airlines, leads us to conclude Pike's sex discrimination claims are not properly classified as either a "minor" or "major" dispute which are preempted by the RLA. Rather, we agree with Pike that her state law and federal rights to be free from unlawful sex discrimination are independent of the collective bargaining agreement, derive from statute, and cannot be bargained

6

away as part of a collective bargaining agreement. Thus, her claims are not preempted by the RLA.

Pike relies primarily on Alexander v. Gardner-Denver Co. (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, and its progeny, although that case did not arise under the RLA. In Gardner-Denver, the petitioner (Alexander), alleging that he was unlawfully discharged because of his race, filed a grievance under the collective bargaining agreement to which his employer and his union were parties. Following adverse rulings in his arbitration hearing and before the EEOC, Alexander filed a complaint in federal district court alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964. Gardner-Denver, 415 U.S. at 38-43.

In reversing lower court rulings that Alexander was bound by the arbitration decision and had no right to sue under Title VII, the United States Supreme Court held that an employee's right to sue under a Title VII discrimination claim is not foreclosed by prior submission of the claim to binding arbitration in accordance with a collective bargaining agreement. The Court recognized that claims of unlawful employment discrimination under Title VII could be adjudicated in different forums. Gardner-Denver, 415 U.S. at 47. In the non-judicial forum, an arbitrator has the authority to resolve questions of contractual rights under the collective bargaining agreement while, in the court system, the judiciary reviews statutory rights independent of that agreement. Gardner-Denver, 415 U.S. at 49. "The distinctly separate nature of these

7

contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." Gardner-Denver, 415 U.S. at 50. "Both rights have legally independent origins and are equally available to the aggrieved employee." Gardner-Denver, 415 U.S. at 52.

The Court emphasized that, notwithstanding a collective bargaining agreement clause against discrimination, an employee's rights under Title VII are not part of the collective bargaining process and cannot be prospectively waived. Gardner-Denver, 415 U.S. at 52.

> Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver. [Citation omitted.]

Gardner-Denver, 415 U.S. at 51, 52.

The arbitrator's task is to effect the intent of the parties under the collective bargaining agreement (primarily in accordance with "the law of the shop, not the law of the land," Gardner-Denver, 415 U.S. at 57), and he has authority to resolve only questions of contractual rights, rather than the requirements of legislation. Gardner-Denver, 415 U.S. at 53-54, 56-57. On the other hand, an employee's claim under Title VII is a statutory right independent of the arbitration process making arbitration a "comparatively inappropriate" forum for the resolution of such claims. Gardner-Denver, 415 U.S. at 54, 56. "[T]he resolution of

8

statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." <u>Gardner-Denver</u>, 415 U.S. at 57.

Similarly, in Barrentine v. Arkansas-Best Freight Systems, Inc. (1981), 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (citing <u>Gardner-Denver</u>), the Supreme Court held that petitioner's wage claims under FLSA are not barred by the prior submission of their grievance to contractual dispute resolution procedures--arbitration being designed to protect contractual rights as opposed to statutory rights. <u>Barrentine</u>, 450 U.S. at 737, 742-45. Again, the Supreme Court noted that an arbitrator, unlike a federal judge, has no institutional obligation to enforce federal legislative policy. <u>Barrentine</u>, 450 U.S. at 744-45. See also, McDonald v. City of West Branch, Michigan (1984), 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 and Wilko v. Swan (1953), 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (applying the same logic in the context of other federal statutes).

In <u>Atchison</u>, a case decided in 1987, the Supreme Court again determined that a statutory claim was not subject to a collective bargaining agreement's binding arbitration clause--this time, in a case involving the RLA. In that case, the Court held that the fact an injury was caused by conduct that may have been subject to arbitration under the RLA does not deprive a railroad employee of his right to bring a FELA action for damages. <u>Atchison</u>, 480 U.S.

9

at 564-65. Citing McDonald, Barrentine, and Gardner-Denver, the Court reiterated that, while the RLA "minor" disputes remedy may be exclusive in some circumstances, that is not the case where the employee's claim is based on a statute that is designed to guarantee minimum substantive rights. Atchison, 480 U.S. at 565. Title VII is such a statute, having been enacted by Congress "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Gardner-Denver, 415 U.S. at 44.

Notwithstanding the line of authority of the above cases, BN argues that although the RLA does not substantively preempt Title VII, under federal law Pike's Title VII claim must, nevertheless, be pursued in the RLA arbitration forum. BN relies on Gilmer v. Interstate/Johnson Lane Corp. (1991), 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, and cases incorporating its rationale which, at first blush, appear to evidence a decided shift from the Court's reasoning in Gardner-Denver.

Gilmer involved an age discrimination claim which, under Gilmer's NYSE securities representative registration agreement, was subject to compulsory arbitration. Gilmer, 500 U.S. at 21. After first filing his claim with the EEOC, Gilmer sued in federal district court alleging a violation of the Age Discrimination in Employment Act (ADEA). Citing Gardner-Denver, the trial court denied the employer's demand for compulsory arbitration. Gilmer's agreement, however, was not limited to contract-based claims

10

pursuant to a collective bargaining agreement, but also mandated arbitration for statutory claims. Gilmer, 500 U.S. at 35.

The Court held that Gilmer's ADEA claim was subject to compulsory arbitration pursuant to the Federal Arbitration Act (FAA). Gilmer, 500 U.S. at 24-29. In distinguishing the Gardner-Denver line of cases, however, the Gilmer Court noted several important distinctions which are germane to our resolution of the issue in the instant case. First, the Court noted that the Gardner-Denver cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims, but rather, involved the "quite different" issue of whether arbitration of contract-based claims precluded subsequent judicial review when the employees had not agreed to arbitration of their statutory claims and the arbitrators were not authorized to resolve those claims. Gilmer, 500 U.S. at 35.

Here, while the BN-Union collective bargaining agreement is not a part of the record on appeal, neither party has suggested in their briefs that Pike's statutory discrimination claims were specifically made subject to any agreement to arbitrate, and, it is undisputed that Pike has not, in fact, arbitrated her claims.

Second, the Gilmer Court stated that because the Gardner-Denver cases arose in the context of collective bargaining agreements, the claimants were represented by their unions in the arbitration proceedings and there was, therefore, an important concern over the "tension between collective representation and individual rights," a concern not applicable in Gilmer. Gilmer,

11

500 U.S. at 35.

Since Pike's dispute also arises in the context of a collective bargaining agreement, the important concern distinguishing the Gardner-Denver cases from Gilmer is present here. Even if Pike is entitled to be represented by counsel of her choice at the arbitration hearing, the arbitrator's source of authority is the collective bargaining agreement, and his task is to effectuate the intent of the parties (BN and the Union) by interpreting the agreement in accordance with the law of the shop and the various needs of the employer and the union, rather than in accordance with the law of the land. Gardner-Denver, 415 U.S. at 53, 56-57. Accordingly, the tension between contractual and statutory objectives remains. Gardner-Denver, 415 U.S. at 57.

Third, the Court noted that contrary to Gilmer, the Gardner-Denver line of cases was not decided under the FAA which, as the Court noted, reflects a "liberal federal policy favoring arbitration agreements." Gilmer, 500 U.S. at 25 (citing Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc. (1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, and Moses H. Cone Memorial Hospital v. Mercury Construction Corp (1983), 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765.) Similarly here, the FAA is not applicable to Pike's claim.

While Gilmer may evidence a narrowing of the Supreme Court's rationale as expressed in the Gardner-Denver cases, the Gilmer Court did not overrule the latter authority, but rather, carefully distinguished cases involving agreements to arbitrate statutory

12

rights subject to the FAA from cases arising in the context of a collective bargaining agreement which neither involve an agreement to arbitrate statutory rights nor the application of the FAA. Inasmuch as Pike's case falls into the latter category rather than the former, we conclude that Gardner-Denver and its progeny control. We further conclude that the RLA does not mandate arbitration of Pike's Title VII claims.

Our determination in that regard is further reinforced by the Supreme Court's recent decision in Hawaiian Airlines, a case which squarely addressed the scope of federal preemption under the RLA. That state court case involved an employee's claims which were based upon federal and state statutes, but which the employer and trial court characterized as a "minor" dispute under the RLA.

In that case, Norris, an aircraft mechanic for Hawaiian Airlines (HAL), was terminated after refusing to sign a maintenance record, as required by his collective bargaining agreement, for a plane he considered unsafe and after reporting his concerns to the Federal Aviation Administration. His separate state court suits under the Federal Aviation Act and state whistleblower protection law were dismissed as being preempted by the RLA's mandatory arbitration mechanism for "minor" disputes. Hawaiian Airlines, 114 S.Ct. at 2241-43. On granting certiorari, the Supreme Court affirmed the Hawaiian Supreme Court's reversal of the trial court's decision, holding that the RLA did not preempt Norris' state law causes of action. Hawaiian Airlines, 114 S.Ct. at 2251.

Citing Conrail and Atchison, among other cases, the Court

13

noted that the "minor" disputes contemplated by the RLA are those grounded in the collective bargaining agreement, i.e., those involving the interpretation or application of existing labor agreements. Hawaiian Airlines, 114 S.Ct. at 2245, 2247. Furthermore, the RLA's mechanism for resolving "minor" disputes through arbitration does not preempt causes of action to enforce rights and obligations that exist independently of the collective bargaining agreement. Hawaiian Airlines, 114 S.Ct. at 2246-47 (citing Atchison, 480 U.S. 557 and Barrentine, 450 U.S. 728). Substantive protections provided by state law, independent of whatever labor agreement might govern, are not preempted by the RLA. Hawaiian Airlines, 114 S.Ct. at 2246 (citing Missouri Pacific R. Co. v. Norwood (1931), 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010).

Noting that the preemption standard leading to Atchison was virtually identical to that employed in cases involving § 301 of the Labor Management Relations Act (LMRA), the Court then went on to adopt the framework used in Lingle v. Norge Division of Magic Chef, Inc. (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, as being appropriate for addressing preemption under the RLA. Hawaiian Airlines, 114 S.Ct. at 2249. Under Lingle, the question is whether the plaintiff's state law claims are independent of the collective bargaining agreement. While recognizing that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination . . . , the Court disagreed that

14

> such parallelism render[ed] the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes.

Hawaiian Airlines, 114 S.Ct. at 2248-49 (quoting Lingle, 486 U.S. at 408-10.) We have heretofore adopted the Lingle standard in the context of an employee's wrongful discharge claim based upon allegations of the employer's sexual harassment and discrimination, and held that her claim was not preempted by the LMRA, although her employment was governed by a collective bargaining agreement. Foster v. Albertsons, Inc. (1992), 254 Mont. 117, 835 P.2d 720.

Similarly, in the instant case, utilizing the test set forth in Lingle, we conclude that Pike's claim of sexual discrimination is independent of the collective bargaining agreement, and does not require interpretation of that agreement. Rather, whether BN terminated Pike because of her gender and whether the reason which it offered as a basis for that termination was pretextual and in violation of Pike's substantive rights to be free from sexual discrimination under the Montana Human Rights Act, is purely a factual question, the resolution of which requires only the factual inquiry into BN's motive for discharging her. Hawaiian Airlines,

15

114 S.Ct. at 2251.

Accordingly, we hold that Pike's statutory right to litigate her Title VII sex discrimination claim in court is not foreclosed by the arbitration provisions of the RLA, nor is her state law claim of sex discrimination preempted substantively by that Act. Here, the source of Pike's right to be free from sexual discrimination is not the collective bargaining agreement. Rather that source is found in federal and state law. It is clear that "minor" disputes are subject to the mandatory dispute resolution provisions of the RLA. However, it is also clear that where the employee's claim arises independently of the contractual provisions of the collective bargaining agreement and is, instead, grounded in the employee's independent statutory right under federal and state law to be free from sexual discrimination, then her right to litigate that claim in a judicial forum is not preempted by the RLA. Conrail does not control. Neither that case, nor Elgin, involved preemption analysis and neither involved claims deriving from statutory grounds independent of the collective bargaining agreement. Hawaiian Airlines, 114 S.Ct. at 2249-51.

Finally, we note BN's reliance on various federal circuit court decisions including, among others, Alford v. Dean Witter Reynolds (5th Cir. 1991), 939 F.2d 229; Bender v. A.G. Edwards & Sons, Inc. (11th Cir. 1992), 971 F.2d 698; Hirras v. Nat'l R.R. Passenger Corp. (5th Cir. 1994), 10 F.3d 1142, vacated and remanded (1994), 114 S.Ct. 2732, 129 L.Ed.2d 855, on remand (5th Cir. 1994), 39 F.3d 522 (withdrawn on denial of rehearing and reh. en banc),

16

superseding opinion, (5th Cir. 1995), 44 F.3d 278; and Croston v. Burlington Northern Railroad Co. (9th Cir. 1993), 999 F.2d 381.  In light of the manner in which the Supreme Court distinguished the Gardner-Denver line of cases in Gilmer and our conclusion that Pike's case fits within the former rather than the latter line of authority, and in view of the Court's decision in Hawaiian Airlines, we do not find the cases cited by BN persuasive.

We hold that the District Court erred in determining that Pike's state law and federal claims of sex discrimination are preempted by RLA, and we reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices