John SHANNON and Virginia Shannon, Plaintiffs,

v.

MTA METRO–NORTH RAILROAD, Leonard W. Maglione, Janet Williams, William G. Lehn, Robert E. Lieblong, and Roger G. Klopfer, Defendants.

No. 96 Civ. 6538 (CBM).

United States District Court, S.D. New York.

Jan. 17, 1997.

Seiff & Kretz, New York City, for John Shannon, Virginia Shannon.

C. Sue Barnett, Richard K. Bernard, New York City, Carol S. Barnett, Richard K. Bernard, General Counsel, New York City, for MTA Metro–North Railroad.

Carol S. Barnett, New York City, for Leonard W. Maglione, Janet Williams, William G. Lehn, Robert E. Lieblong, Roger G. Klopfer.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, an individual employee of defendant Metro–North, asserts that defendants have committed various state law torts against him. Plaintiff makes this motion to remand his claims to state court after defendants removed them to this court. For the reasons stated below, this motion is granted.

## I. BACKGROUND

Plaintiff John Shannon is a supervisor employed by defendant Metro–North. Plaintiff alleges that when his position with defendant was abolished, he exercised his seniority rights to become Supervisor of Structures in the New York office. However, defendant Maglione, the person in charge of the New York office, allegedly refused to let plaintiff take the position. Instead, defendant Maglione directed plaintiff to serve as a safety supervisor, which allegedly involved demeaning work. Defendant also allegedly harassed plaintiff and threatened him repeatedly with physical harm.

As a result of this treatment, plaintiff demanded through his union representative and his attorney that defendant Metro–North take appropriate action against defendant Maglione. Eventually, plaintiff was successful at obtaining the position he desired and defendant Maglione was "cautioned" for his behavior.

Plaintiff alleges that defendant Maglione and his supervisor, defendant Lehn, then instituted a pattern of harassment against plaintiff in retaliation for his bringing the matter up with defendant Metro–North. According to plaintiff, defendants have (1) sought to disqualify plaintiff as a supervisor, (2) defamed plaintiff by asserting that he had abandoned a vehicle which he had not abandoned, (3) subjected him to disciplinary charges which were undeserved, (4) required him to report to Metro–North headquarters every day, something which was not required of other supervisors, and (5) engaged in (and continue to engage in) other harassing conduct towards plaintiff. Plaintiff seeks from all defendants compensatory and punitive damages for the intentional infliction of emotional distress and defamation. Plaintiff also seeks relief from the individual defendants for their tortious interference with his contractual relations with defendant Metro–North.

## II. PROCEDURAL HISTORY

This case was originally brought before Judge Duffy in this court along with a federal claim. Specifically, plaintiff alleged that defendants violated 42 U.S.C. § 1983 by retaliating against him for his exercise of First Amendment rights [1]. The court held that (1)

---

1. 42 U.S.C. § 1983 reads in relevant part:

Every person who, under color of any statute,

plaintiff's federal and state claims were not preempted by the Railway Labor Act ("RLA"); and (2) plaintiff had failed to state a cause of action under § 1983 because the speech in question was not a matter of public concern, as is required for public employees under the law of this Circuit. *Shannon v. MTA*, 915 F.Supp. 591 (S.D.N.Y.1996). Judge Duffy refused to exercise jurisdiction over the pendent state law claims and dismissed the case entirely. *Id.*

Plaintiff amended his complaint to remove any references to § 1983 (although the references to the First Amendment remain), and added a claim for tortious interference with contractual relations. He then filed his case in New York Supreme Court and defendants removed the case to this court. Plaintiff then filed this motion to remand.

## III. ANALYSIS

Plaintiff argues that this court has no subject matter jurisdiction because no federal question is raised in the complaint. Defendants' papers raise two points in opposition [2], (1) that there is indeed a federal question raised in the complaint and that the action is removable under the "well-pleaded complaint" rule, and (2) that the state law claims have been preempted by the RLA and thereby converted into federal claims. As will be seen shortly, both of these points are without merit.

### A. Federal Claims Raised Under the "Well–Pleaded Complaint" Rule

■ According to the Second Circuit, "a defendant in an action filed in state court may remove that claim to federal court ... if

the plaintiff's 'well-pleaded complaint' includes a federal cause of action." *Shafii v. British Airways, PLC*, 83 F.3d 566, 569 (2d Cir.1996) (holding that a wrongful discharge claim and a breach of mediation agreement claim between an airline and an employee are not removable to federal court). *See also Smith v. Dunham–Bush Inc.*, 959 F.2d 6, 8 (2d Cir.1992) ("Federal question jurisdiction generally exists only when a well-pleaded complaint raises issues of federal law on its face.") Defendants argue that plaintiff's repeated references in the complaint to the First Amendment [3] raise federal questions that make the case removable. This is not the case.

Though the complaint makes repeated references to the First Amendment, plaintiff has conceded in his moving papers that he does not and cannot (given this court's earlier ruling) seek relief under 42 U.S.C. § 1983, the statute upon which plaintiff would have to rely to recover damages stemming from his alleged First Amendment violation. In fact, § 1983 is not mentioned once in the' complaint, nor is it stated anywhere that an alleged violation of plaintiff's alleged First Amendment rights entitles him to damages. In short, no issue of federal law is raised. All of the causes of action listed in the complaint are grounded in state tort law, and plaintiff's alleged First Amendment right is not relevant to whether or not defendants are liable under these causes of action. If defendants did indeed commit the torts he mentions (namely, if they engaged in outrageous conduct, defamed him, and tortiously interfered with his contractual relations), then defendants are liable irrespective of

---

ordinance, regulation, custom, or usage, ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws ... shall be liable to the party injured....

**2.** Defendants raised a third point in opposition, namely that plaintiff had failed to comply with Local Civil Rule 3(b) which requires that a memorandum of law be submitted with a motion. Civil Rule 3(b), United States District Courts for the Southern and Eastern Districts of New York: Joint Rules for General, Civil, Criminal, Admiralty and Magistrate Judge Proceedings. However, the court handled this by directing plaintiff by order dated November, 22, 1996 to file a memo-

randum of law. Plaintiff complied with this order.

**3.** Defendants also make much of the fact that the Complaint refers repeatedly to the National Railway Mediation Board and the American Railway Supervisors Association, entities which must exist according to the terms of the RLA and the Collective Bargaining Agreement between the parties which arises thereunder. However, the fact that plaintiff points out that the National Railway Mediation Board ruled in his favor on a particular claim or that he is a member of the American Railway Supervisors Association hardly indicates the assertion of a federal claim.

whether. plaintiff's First Amendment rights were violated or not. Thus, the references to the First Amendment are entirely superfluous. While it would have been wiser for plaintiff to have stricken all references to the First Amendment from his complaint, it would be improper for this court to attempt to retain jurisdiction on this basis.[4]

## B. Preemption

■ It is very clear from the case law that the state law claims raised here are not preempted by the RLA. As a preliminary matter, it should be noted that Judge Duffy *held* that the state law claims in this very case were not preempted by the RLA and then declined to exercise jurisdiction over them. *Shannon,* 915 F.Supp. at 593. ("Under the current state of the law, the . . . state law claims alleged by Shannon . . . are not preempted by the RLA.")

Furthermore, the case law on this subject leads to the unmistakable conclusion that preemption does not apply in this situation. 'Reference need be made to only three cases, all decided within the past three years.

The first case, *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), is a Supreme Court decision dealing with preemption under the RLA. In that case, plaintiff was a mechanic employed by defendant who allegedly reported to the FAA a particular problem with the manner in which defendant was servicing its airplanes and was discharged as a result. After seeking relief in the grievance board, plaintiff sued under the Hawaii Whistleblower Protection Act and the state tort of wrongful discharge. Defendant attempted to remove the action, but the District Court remanded the case to a state court in Hawaii. Defendant appealed and the case ultimately reached the Hawaiian Supreme Court, which held that the RLA did not preempt state

wrongful discharge law or the Whistleblower Protection Act. In affirming the Hawaiian Supreme Court, the United States Supreme Court created a simple test to determine whether or not a state cause of action was preempted by the RLA. Essentially, if the state law cause of action requires an interpretation of the Collective Bargaining Agreement ("CBA"), then it is preempted; if no such interpretation is necessary, then there is no preemption. *Id.* 512 U.S. at 258–64, 114 S.Ct. at 2247–49. The Court held that a wrongful discharge did not require an interpretation of the CBA, since the elements of the wrongful discharge claim, which have to do with the motive of the employer for firing an employee, are determined by state law and bear no relation to the terms of the particular contract breached. *Id.* at 266, 114 S.Ct. at 2251.

The Second Circuit applied this test in the case of *Gay v. Carlson,* 60 F.3d 83 (2d Cir. 1995) to determine that the state law claims of defamation, prima facie tort, and conspiracy are not preempted by the RLA. The court noted that its own precedents (copiously cited by defendants in this case) gave preemption a much broader scope but indicated that this view has been significantly narrowed by the Supreme Court in the *Hawaiian Airlines* case. *Id.* at 87–88.

The Second Circuit has also held in the case of *Shafii v. British Airways, PLC,* 83 F.3d 566 (2d Cir.1996) that a plaintiff's state law claim of breach of a mediation agreement signed between himself and a defendant was not preempted by the RLA because the agreement, once again, would not have to be interpreted to adjudicate those claims.

It is clear from these cases that in the case at bar, preemption cannot be applied. As regards plaintiff's defamation claim, it is almost identical to the one noted in *Gay* and is not preempted since no interpretation of the

---

**4.** The court is also mindful of the futility of retaining federal jurisdiction simply because of the unfortunate references to the Federal Constitution. If jurisdiction is retained, the court would then be compelled to dismiss the only alleged federal claim in the action, a liberally pleaded § 1983 claim, since the matter is already *res judicata.* The court would then in all likelihood decline jurisdiction over the pendent

claims, and plaintiff would then probably file a third action in state court with an almost identical complaint, · omitting only the casual references to the First Amendment. While this result would be necessary if a federal claim were actually alleged, the court is reluctant to read this complaint so broadly as to require such a waste of judicial resources.

CBA is required to make out the elements of a defamation claim.

Furthermore, an intentional infliction of emotional distress claim does not require any interpretation of the CBA, and the court cannot anticipate any serious argument that one needs to interpret a collective bargaining agreement in order to determine whether particular conduct is extreme and outrageous.

■ Finally, even tortious interference with contractual relations does not require an interpretation of the CBA. To show a tortious interference with contractual relations, plaintiff must demonstrate (1) that a valid contract exists, (2) that a third party had knowledge of the contract, (3) that the third party intentionally and improperly procured the breach of the contract, and (4) that the breach resulted in damage to plaintiff. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996). Element (1) is uncontested; clearly there was an agreement. Elements (2) and (3) inquire into the motives of the individual defendants and have nothing to do with the terms of the contract, and element (4) only examines damages that plaintiff has suffered. While it could be argued that any determination of damages necessarily involves an interpretation of the CBA, the Second Circuit clearly held in *Gay* that "[l]ooking to the agreement to assess damages is not the type of interpretation that *Norris* [*Hawaiian Airlines* ] contemplated as a ground for preemption." *Gay*, 60 F.3d at 89.

Thus, for all the reasons stated above, this case should be remanded to state court.