No. 99-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 292

302 Mont. 289

16 P.3d 992

GARY WINSLOW,

Plaintiff and Appellant,

v.

MONTANA RAIL LINK, INC.,

a Montana corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Erik Thueson and Jamie Towe; Thueson & Lamb, Helena, Montana

For Respondent:

Ronald MacDonald and Darla Keck; Datsopoulos, MacDonald & Lind,

Missoula, Montana

Submitted on Briefs: June 1, 2000
Decided: November 27, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Gary Winslow (Winslow) appeals from the First Judicial District Court's Memorandum and Order dismissing Counts I, II and III of Winslow's complaint for lack of subject matter jurisdiction and granting summary judgment to Montana Rail Link (MRL) on Count IV seeking punitive damages. Winslow also appeals the District Court's denial of his motion to amend his complaint and asks this Court to rule on an unresolved discovery issue. We reverse in part, affirm in part, and remand for further proceedings.

Background

¶2 Winslow began working for MRL in 1987. Prior to working for MRL, he was employed by the Milwaukee Railroad from 1965 to 1976. His employment with MRL was subject to a Collective Bargaining Agreement (CBA) between his union, the Brotherhood of Locomotive Engineers and MRL. The CBA contains provisions relating to discipline and establishes an appeals and hearing process requiring that an employee such as Winslow cannot be dismissed without just cause and without a fair and impartial fact-finding session.

¶3 In the fall of 1995, while performing job related duties for MRL, Winslow felt a sudden pain in his groin. He filled out a personal injury form explaining that he had pulled a muscle in his groin. He saw a doctor who suggested surgery. Winslow reported to MRL that his doctor felt this was a hernia and that it required surgery. Winslow underwent surgery in September of 1995 and subsequently returned to work on light duty. On December 20, 1995 he received a written order from MRL to attend a disciplinary hearing to address his "fail[ure] to provide factual information regarding [his] injury." Specifically, MRL's accusation was that since Winslow had failed to report that he had a hernia three

years earlier, his claim was fraudulent. The disciplinary hearing was held and the Special Board of Adjustment (Board) found that Winslow's hernia was a pre-existing injury, unrelated to his employment with MRL. The Board concluded that "[MRL] had the right to terminate [Winslow] for his obvious dishonesty," and Winslow was terminated.

¶4 Winslow did not appeal the Board's decision to federal court. Rather, he filed a claim in state court alleging that he lost his job due to MRL's mismanagement and misconduct. He also requested damages for infliction of mental distress and for punitive damages. MRL moved to dismiss Winslow's claims for Mismanagement, Violation of the Covenant of Good Faith and Fair Dealing, Common Law Wrongful Discharge, and Emotional Distress for lack of subject matter jurisdiction and moved for summary judgment as to Punitive Damages. The District Court granted the motions to dismiss and for summary judgment.

Issues

¶5 We restate the issues on appeal as follows:

¶6 1.  Did the District Court err in dismissing the claim for negligent mismanagement for lack of subject matter jurisdiction?

¶7 2.  Did the District Court err in dismissing the claim for Violation of the Covenant of Good Faith and Fair Dealing?

¶8 3.  Did the District Court err in dismissing the Common Law Claim for Wrongful Discharge?

¶9 4.  Did the District Court err in dismissing the claim for Emotional Distress?

¶10 5. Did the District Court err in granting summary judgment on Punitive Damages?

¶11 6.  Did the District Court abuse its discretion in denying Winslow's motion to amend his complaint?

¶12 7. Should this Court resolve a discovery dispute which was not addressed by the District Court?

Standard of Review

¶13 Motions to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hilands Golf Club v. Ashmore (1996), 277 Mont. 324, 328, 922 P.2d 469, 471-72. In considering such motions, the complaint is construed in the light most favorable to the plaintiff and all allegations of fact contained therein are taken as true. The District Court's determination that it did not have jurisdiction over this case is a conclusion of law. Pike v. Burlington N.R.R. Co. (1995), 273 Mont. 390, 392-93, 903 P.2d 1352, 1353. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Hilands Golf Club*, 277 Mont. at 328, 922 P.2d at 472.

Discussion

¶14 1.  Did the District Court err in dismissing the claim for negligent mismanagement for lack of subject matter jurisdiction?

¶15 In his complaint, Winslow alleges that MRL negligently "mismanaged" its investigation into the hernia injury and, thus, MRL is subject to liability under § 39-2-703, MCA. MRL argues, however, that § 39-2-703, MCA, applies only to personal injuries and not to wrongful discharges from employment. It contends that Winslow's claim is properly characterized as a wrongful discharge claim and is preempted by the Wrongful Discharge from Employment Act (WDEA).

1(a):  Is § 39-2-703, MCA, limited to personal injury claims?

¶16 Section 39-2-703(1), MCA, provides:

> (1) Every person or corporation operating a railway or railroad in this state is liable for all damages sustained by any employee of such person or corporation in consequence of the neglect of any other employee thereof or by the mismanagement of any other employee thereof and in consequence of the willful wrongs, whether of commission or omission, of any other employee thereof when such neglect, mismanagement, or wrongs are in any manner connected with the use and operation of any railway or railroad on or about which he is employed. No contract which restricts such liability is legal or binding.

¶17 In analyzing this statute, the District Court noted that there are very few cases interpreting the statute and all such cases were decided early in the twentieth century.

Those cases all involve injured workers and none involve the termination of an employee. For example, in Lewis v. Northern Pacific Ry. Co. (1907), 36 Mont. 207, 218, 92 P. 469, 473, the Court stated that the purpose of the statute is "to secure the safety of employees . . . ." As the District Court noted, however, Lewis was proceeding under subsection (3) (railroad liability for injuries caused by negligence of engineer) rather than subsection (1), the provision which Winslow invokes. After plowing through the convoluted syntax of subsection (1), the District Court concluded:

> Subsection (1) of 39-2-703, MCA, certainly is not easy to read. However, the last clause states when it applies, that is, a railway corporation is liable when the neglect, mismanagement or wrong is connected with the use and operation of a railway or railroad. The Court concludes, therefore, that the statute is intended to protect employees from personal injuries caused by co-workers. It does not provide a cause of action for wrongful termination.

¶18 We agree with Winslow that the District Court's interpretation of the above language is too restrictive. Courts should not insert language into a statute that the legislature has omitted. Section 1-2-101, MCA; McMillan v. State Compensation Ins. Fund (1997), 285 Mont. 202, 206-08, 947 P.2d 75, 77-79. Furthermore, we are required to interpret statutes according to their plain meaning. Curtis v. District Court (1994), 266 Mont. 231, 235, 879 P.2d 1164, 1166.

¶19 We find nothing in the language of § 39-2-703(1), MCA, which suggests that it is limited to personal injuries caused by co-workers. Rather, in very broad language, it states that railways are "liable for all damages sustained by any employee" as a consequence of the "mismanagement" of any other employee when such mismanagement is "connected with the use and operation" of any railway. Although personal injury resulting from the neglect of a co-worker would be included within the ambit of the statute, so are damages which result from mismanagement connected with the operation of the railroad. We agree with Winslow that, since the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.*, has, for very nearly a century, controlled compensation for physical injuries to railroad workers, it only makes sense that the legislature, in keeping § -703 codified, envisions the statutory language of § 39-2-703, MCA, as broader in scope than FELA, as encompassing more than personal injuries.

¶20 The District Court erred in concluding that § 39-2-703, MCA, applies only to personal injury claims, to the exclusion of mismanagement in the handling of an employee

termination.

## 1(b):  Is § 39-2-703, MCA, preempted by WDEA?

¶21 The District Court reasoned that because Winslow's claim is for wrongful discharge, the WDEA applies. Except as provided in § 39-2-912, MCA, the WDEA is the exclusive remedy for wrongful discharge. Section 39-2-912(2), MCA, states that the WDEA does not apply to the discharge of an employee covered by a CBA. The District Court concluded that (1) since Winslow is covered by a CBA, he has no claim for wrongful discharge under the WDEA, and (2) since his claim for "mismanagement" requires construction of the CBA, the claim is preempted by the Railroad Labor Act (RLA).

¶22 We agree with the District Court's first proposition. Since Winslow is an employee covered by a collective bargaining agreement, the WDEA has no application to his claim. Section 39-2-912(2), MCA.

¶23 As to the second proposition, the fact that Winslow is an employee covered by a collective bargaining agreement does not necessarily mean that his claim for mismanagement is one requiring an interpretation or construction of that agreement and is therefore preempted by the RLA.

¶24 The scope of federal preemption was addressed in Hawaiian Airlines, Inc. v. Norris (1994), 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203. Norris, an airplane mechanic, had refused to sign off on the maintenance record of a plane that he did not believe to be safe. He was accused of insubordination. After a CBA disciplinary hearing he was terminated. Like Winslow, Norris decided to forego an administrative appeal and chose to file a lawsuit claiming that he had been wrongfully discharged. *Norris*, 512 U.S. at 250-51, 114 S.Ct. at 2242-43, 129 L.Ed.2d at 209-10.

¶25 The Supreme Court rejected the airline's contention that Norris' state law claims were preempted by federal law. Preemption, the Court stated, "should not be lightly inferred" when it comes to employment standards which are "within the traditional police power of the state." *Norris*, 512 U.S. at 252, 114 S.Ct. at 2243, 129 L.Ed.2d at 211. Norris' union contract, like Winslow's, was governed by the RLA. In addressing § 151 of the Act, the Court held it does not demonstrate "a clear and manifest congressional purpose to create a regime that broadly pre-empts substantive protections extended by the States, independent of any negotiated labor agreement." *Norris*, 512 U.S. at 255-56, 114 S.Ct. at 2245, 129 L.

Ed.2d at 213. Under § 301 of the Act, preemption " 'merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.' " *Norris*, 512 U.S. at 262, 114 S. Ct. at 2249, 129 L.Ed.2d at 217 (quoting Lingle v. Norge Div. of Magic Chef. (1988), 486 U.S. 399, 409, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410, 420-21).

¶26 We determine that the District Court, in concluding that Winslow's claim "requires interpretation of the CBA" and is therefore preempted by the RLA, read too much into the allegations of the complaint. The complaint makes no reference to the CBA or to the rights and remedies accorded Winslow under that agreement. Rather, the complaint alleges that MRL was guilty of "mismanagement or neglect" under § 39-2-703, MCA. The source of the right to be free from mismanagement is state statutory law, § 39-2-703, MCA, and is independent of any negotiated labor agreement. Under the teachings of *Norris*, the claim is not subject to federal preemption.

¶27 In addressing MRL's motion to dismiss, the District Court was required to treat the well-pled allegations of the complaint as admitted and to construe the complaint in the light most favorable to Winslow. *See Hilands Golf Club*, 277 Mont. at 328, 922 P.2d at 471. Here, the District Court did not construe the complaint in the light most favorable to Winslow when, in addressing MRL's Rule 12(h) motion, it inferred that Winslow's pleadings necessarily implicated the terms of the CBA. Based on that inference, the court then concluded that the complaint demonstrated a lack of subject matter jurisdiction. We conclude that the court erred in determining that terms of the CBA are necessarily implicated by the allegations in the complaint. The plain language of the complaint simply invokes the mismanagement provisions of § 39-2-702(1), MCA, which are independent of the CBA. We hold that the District Court abused its discretion in dismissing Winslow's claim for negligent mismanagement under § 39-2-703, MCA, and that decision is reversed.

¶28 2.  <u>Did the District Court err in dismissing the claim for Violation of the Covenant of Good Faith and Fair Dealing</u>?

¶29 In Count II of his complaint, Winslow alleges a claim for violation of the covenant of good faith and fair dealing and a claim for common law wrongful discharge. The District Court dismissed the claim for violation of the implied covenant of good faith and fair dealing based upon our holding in Foster v. Albertson's, Inc. (1992), 254 Mont. 117, 126,

835 P.2d 720, 726. In *Foster,* we held that any implied covenant of good faith and fair dealing in the employment context arises from the underlying contract of employment, which in *Foster*, as well as here, is the collective bargaining agreement. Collective bargaining agreements must be interpreted according to federal, not state law. "Thus, the implied covenant claim is preempted by federal law pursuant to § 301." *Foster*, 254 Mont. at 126, 835 P.2d at 726. As Winslow reluctantly concedes in his brief, the same reasoning applies to his claim for breach of the covenant of good faith. We hold that the District Court did not err in dismissing the claim for violation of the covenant of good faith and fair dealing.

¶30 3. Did the District Court err in Dismissing the Common Law Claim for Wrongful Discharge?

¶31 In *Foster*, we held that a common law claim for retaliatory discharge related to sexual harassment was independent of the collective bargaining agreement; "it [did] not turn on the meaning of any term of the collective bargaining agreement. Thus, the appellant's wrongful discharge claim is independent of the collective bargaining agreement for purposes of § 301 preemption." *Foster*, 254 Mont. at 127, 835 P.2d at 727. In the case *sub judice* the District Court acknowledged the above holding in *Foster* but concluded that "Winslow ha[s] not alleged a cause of action independent of the collective bargaining agreement. Because his wrongful discharge claim is dependent on the terms of the collective bargaining agreement, it is preempted by the RLA and this Court does not have subject matter jurisdiction over Count II."

¶32 We determine that the District Court erred in reaching the above conclusion. As we stated above in our discussion of the mismanagement claim, Winslow has alleged that MRL was guilty of neglect or mismanagement of the railroad in violation of § 39-2-703, MCA. That claim, which invokes a statutory remedy under state law, is independent of his remedies under the CBA. Although the factual inquiry in resolving the question of mismanagement may parallel that of the contractual determination of just cause under the CBA, resolution of the mismanagement claim under § 39-2-703, MCA, does not necessarily turn on the meaning of any term of the collective bargaining agreement. Thus, as in *Foster*, we hold that the Winslow's wrongful discharge claim is not preempted by the RLA.

¶33 4. Did the District Court err in Dismissing the Claim for Emotional Distress?

¶34 Winslow's complaint sets forth a claim for intentional infliction of emotional distress. The District Court dismissed the claim for emotional distress as being dependent upon his claim for wrongful discharge over which the court concluded it had no jurisdiction. As we have already held above, the District Court erred in concluding that Winslow's independent claim for mismanagement and wrongful discharge was preempted.

¶35 In Sacco v. High Country Indep. Press (1995), 271 Mont. 209, 232, 237, 896 P.2d 411, 425, 428, we recognized a separate cause of action for negligent or intentional infliction of emotional distress. Contrary to MRL's contentions, such claims are not preempted. This issue was addressed in Shannon v. MTA Metro-North R.R. (S.D.N.Y. 1977), 952 F.Supp. 177, in which the Federal District Court concluded:

> [A]n intentional infliction of emotional distress claim does not require any interpretation of the CBA, and the court cannot anticipate any serious argument that one needs to interpret a collective bargaining agreement in order to determine whether particular conduct is extreme and outrageous.

*Shannon, 952 F.Supp. at 181.*

¶36 We agree with the reasoning of the Federal District Court in New York that a claim for infliction of emotional distress does not depend upon the interpretation of the CBA. It is therefore not preempted by the RLA. *Norris*, 512 U.S. at 262, 114 S.Ct. at 2249, 129 L. Ed.2d at 217.

¶37 5.  Did the District Court err in granting summary judgment on punitive damages?

¶38 Our standard of review in appeals from summary judgment is *de novo*. We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Brinkman & Lenon v. P & D Land Enterprises (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114.

¶39 The District Court reasoned that since there must be an award of some actual damages before there can be an award of punitive damages and since the court had determined that it did not have subject matter jurisdiction of any of Winslow's claims, there was no basis on which the court could find either actual or punitive damages. Accordingly, the court granted MRL's motion for summary judgment on punitive damages. Since this Court has determined above that the District Court did have subject matter over some of Winslow's

claims, the District Court's underlying premise (complete lack of jurisdiction) was incorrect. Accordingly, its conclusion that there would likewise be no basis for either actual or punitive damages and that, therefore, MRL was entitled to judgment as a matter of law was erroneous. The summary judgment dismissing the claim for punitive damages is reversed.

¶40 6. Did the District Court abuse its discretion in denying Winslow's motion to amend his complaint?

¶41 We review a district court's denial of a motion to amend the pleadings to determine whether the court abused its discretion. Federated Mut. Ins. Co. v. Anderson (1999), 297 Mont. 33, 40, 991 P.2d 915, 920.

¶42 After MRL filed its motion to dismiss for lack of subject matter jurisdiction and its motion for summary judgment on punitive damages, Winslow moved to amend his complaint to add a claim for emotional distress under FELA and to add a new factual basis for his punitive damage claim. The District Court held that, under our holding in Peuse v. Malkuch (1996), 275 Mont. 221, 228, 911 P.2d 1153, 1157, Winslow could not change his legal theory after MRL filed its motion for summary judgment.

¶43 On appeal, Winslow does not mention the proposed emotional distress claim under FELA but does contend that the court erred in not allowing him to amend the complaint to add a new factual basis for the punitive damage claim in the original complaint.

¶44 In the *Peuse* decision relied upon by the District Court, Peuse sought to amend the pleadings two years after the original pleadings had been filed. We concluded that:

> If the amendments were allowed after the motion for summary judgment, [the respondent] would be unduly prejudiced since his motion was based on the original pleadings which remained unchanged for almost two years. Litigants, should be allowed to change legal theories after a motion for summary judgment has been filed only in extraordinary cases.

*Peuse, 275 Mont. at 228, 911 P.2d at 1157.*

¶45 In the present case, MRL's motion for summary judgment was based upon the proposition that the punitive damage claim, like Winslow's other claims, was preempted.

The merits of that challenge would not have been affected by the proposed amendment. The proposed amendments did not change the punitive damage "theory" of the claim. Punitive damages were sought in the original complaint. The amendment merely seeks to add factual allegations in support of that previously pleaded theory. In other words, had there been merit to MRL's preemption argument, it would have defeated the punitive damage claim even as amended. Thus, there would have been no prejudice to MRL in allowing the amendment to Count IV on punitive damages.

¶46 We hold that the District Court abused its discretion in disallowing the amended complaint. On remand, Winslow should be allowed to amend Count IV of his complaint to add the additional factual contentions in support of his original punitive damage claim.

¶47 7.  Should this Court resolve a discovery dispute which was not addressed by the District Court?

¶48 Winslow contends that his constitutional right to a speedy remedy has been violated by the District Court's failure to rule upon discovery disputes for over a year. In particular, Winslow has requested the identities of other workers who had either sustained similar injuries from similar job duties or had been fired or disciplined after they turned in a personal injury report. MRL has contended that, in light of the privacy rights of the other workers, MRL cannot reveal their names or identities. Although the District Court has not ruled on this issue, Winslow asks that, in the interests of judicial economy, we review the privacy issue in the context of this appeal. We decline to do so.

¶49 Since the discovery issue has not been ruled upon by the District Court, the issue is not ripe for appeal under Rule 1, M.R.App.P. Although Rule 3, M.R.App.P., allows for suspension of the rules for "good cause" shown, we do not find that such good cause has been shown. The District Court did not rule on the pending discovery requests because it did not believe that it had subject matter jurisdiction over the underlying claims. Now that the preemption issue has been resolved favorably to Winslow, we are confident that the District Court will address the discovery requests in a timely fashion and develop the record with regard to any discovery disputes which arguably implicate the privacy rights of other employees.

¶50 This matter is reversed in part, affirmed in part, and remanded for further proceedings consistent with the above opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ MICHAEL C. PREZEAU

District Judge sitting for Justice Jim Regnier

Justice James C. Nelson concurs and dissents:

¶51 I concur with the Court's analysis of Issues 1 through 6, inclusive, and with our decision on those issues. I dissent from our refusal to address Issue 7, the discovery dispute. As to this last issue, I would address and decide the discovery question presented.

¶52 Winslow was terminated from his employment nearly five years ago. Upon filing his complaint, he timely commenced and diligently attempted to obtain discovery of the identities of other workers who had either sustained injuries similar to his from similar job duties or who had been fired or disciplined after they turned in a personal injury report. MRL opposed this discovery in nearly every way possible. The trial court was brought into the dispute early on but never resolved the discovery question despite Winslow's continuous attempts to get a decision. A trial date was lost, and Winslow's claims, ultimately, were dismissed. We have now ruled that the District Court erred in dismissing Winslow's claims and we are sending the case back for further proceedings.

¶53 Unfortunately for Winslow, however, he is essentially back to square one as far as the discovery issue goes; his case is still at ground zero despite years of litigation. No doubt he is looking at months, if not years, of further delay before he has his day in court.

¶54 The privacy matter which is at the heart of the discovery issue is purely one of law. This Court is as capable of deciding this issue as is the trial court and, in matters of law, our review is plenary, in any event.

¶55 Winslow has a constitutional right to speedy remedy afforded without delay. Art, II, Sec. 16, Mont.Const. If this constitutional right has any meaning in the context of this

case, then we should suspend the Rules of Appellate Procedure and decide the discovery issue in this appeal. Our refusal to do so is to continue the frustration of Winslow's Article II, Section 16 rights that has already taken place in the trial court for far too long.

¶56 I dissent from our decision as to Issue 7.

/S/ JAMES C. NELSON

Justice William E. Hunt, Sr., and Terry N. Trieweiler join in the foregoing concurrence and dissent.

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER