No. 01-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 331

KELLY HUNTER,

       Plaintiff and Appellant,

  v.

CITY OF GREAT FALLS,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and for the County of Cascade,
                    The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Jeff Lynch, Attorney at Law, Billings, Montana

       For Respondent:

              David V. Gliko, Attorney at Law, Billings, Montana

                        Submitted on Briefs:  June 27, 2002

                                Decided:  December 20, 2002

Filed:

_____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court

¶1   Kelly Hunter appeals from the order of the Eighth Judicial District Court, Cascade County, granting summary judgment to the City of Great Falls.  We affirm.

¶2   We address whether the District Court erred in granting summary judgment on the basis that, as a probationary employee, Hunter is not entitled to relief under the Montana Wrongful Discharge from Employment Act (Act) or in an action under 42 U.S.C. § 1983 (§ 1983).

## BACKGROUND

¶3   Hunter was appointed as a probationary firefighter with the Great Falls Fire Department (Fire Department) on March 1, 1996. Pursuant to § 7-33-4122, MCA, his initial appointment was for a six-month probationary term.

¶4   In August of 1996, Hunter's superior officers considered whether to promote him to confirmed firefighter.  In a memorandum to Fire Department Deputy Chief Wayne Young, Battalion Chief Randall McCamley advised that, while Hunter's performance had been somewhat erratic and included several "meets or below standard" monthly evaluations, he felt Hunter had the potential to become an effective member of the department.  The Fire Department accepted McCamley's recommendation that Hunter's probationary status be extended beyond the initial six months and reviewed on a monthly basis.

¶5   On September 30, 1996, McCamley reprimanded Hunter for failing to notify him, as Hunter's superior officer, that he would be

2

unable to report to work following knee surgery. On October 24, 1996, Captain Ron Lee recommended in writing to McCamley that Hunter not be confirmed but, instead, be supervised by one captain for an entire month. In an October 25, 1996, memo to Young, McCamley stated he was unable to recommend Hunter for appointment as a confirmed firefighter based on Hunter's lack of trust in his immediate supervisor and McCamley, and his lack of understanding of Fire Department policy, rules and regulations. In turn, Young recommended to Fire Department Chief James Hirose that Hunter's employment be terminated based on his lack of progress in understanding department policies, continuing mistrust of the officers and demonstration of characteristics unbecoming a member of the Fire Department. The City terminated Hunter's employment with the Fire Department on October 31, 1996. Hunter did not dispute or attempt to grieve the extension of his probationary period at any time prior to the termination.

¶6  After his termination, Hunter filed a grievance through the local International Association of Fire Fighters (Firefighters Union). In denying the grievance, Hirose pointed out that Hunter had neither been confirmed nor appointed as a permanent member of the Fire Department. For that reason, Hirose refused to recognize Hunter as a member of the Firefighters Union subject to the grievance procedure.

¶7  Hunter and the Firefighters Union then filed this action. The City moved for summary judgment. It claimed Hunter was not a union member and, even if he were, he was still a probationary employee

3

to whom the Act's remedies do not apply and, therefore, he also did not possess a property interest in his position for purposes of a civil rights action under § 1983. Hunter argued that, even if not a union member, his claim against the City under the Act should survive because he had served his probationary period. He also contended that, having completed his probationary period, he possessed a property interest in employment subject to due process protections.

¶8 The District Court granted the City's motion for summary judgment regarding Hunter's claims under the Act and § 1983, and the Firefighters Union's claims. Hunter appeals.

STANDARD OF REVIEW

¶9 We review a summary judgment *de novo*, employing the same standards used by the trial court: first, whether genuine issues of material fact exist and, if not, whether the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P.; *Winslow v. Montana Rail Link, Inc.*, 2000 MT 292, ¶ 38, 302 Mont. 289, ¶ 38, 16 P.3d 992, ¶ 38. Here, Hunter does not assert the existence of any genuine issue of material fact, but challenges only certain of the District Court's conclusions of law.

We review a district court's conclusions of law to determine if they are correct. *Heller v. Gremaux*, 2002 MT 199, ¶ 7, 311 Mont. 178, ¶ 7, 53 P.3d 1259, ¶ 7.

DISCUSSION

4

¶10 Did the District Court err in granting summary judgment on the basis that, as a probationary employee, Hunter is not entitled to relief under the Act?

¶11 A discharge is wrongful if the employee has completed the employer's probationary period of employment and the discharge is not for good cause. Section 39-2-904(1)(b), MCA. Hunter contends the District Court erred in concluding he was a probationary employee for purposes of the Act because, in *Hobbs v. City of Thompson Falls*, 2000 MT 336, 303 Mont. 140, 15 P.3d 418, we concluded an initial probationary period cannot be extended. He is incorrect.

¶12 *Hobbs* was an action by a discharged police officer against the City of Thompson Falls. The City claimed Hobbs had not successfully completed his probationary period because the City Council had not yet confirmed him as a permanent employee after nearly 13 months' service in a probationary capacity. On that basis, the City denied that Hobbs was wrongfully terminated and the trial court granted its motion for summary judgment. *Hobbs*, ¶¶ 3-5, 7-8. We pointed out on appeal that, by statute, the probationary period of employment for police officers in Montana "cannot exceed one year" and that termination without cause is permissible during the probationary period. Conversely, however, the City could not terminate a police officer without cause following satisfactory completion of the statutory one year of probationary service. *Hobbs*, ¶ 18.

¶13   While Hunter characterizes *Hobbs* as similar to the present case, he ignores the crucial difference between the statutes addressing probationary periods for police officers and firefighters.  The statute regarding police officers at issue in *Hobbs* provides that "[e]very applicant who has passed the examination and received the certificate referred to in § 7-32-4108 must first serve for a probationary term of not more than 1 year."  Section 7-32-4113, MCA.  In other words, the Legislature set a statutory maximum probationary term for a police officer of one year.  In contrast, § 7-33-4122, MCA, applicable to firefighters, provides that "[e]ach appointment shall first be made for a probationary term of 6 months, and thereafter the mayor or manager may nominate and, with the consent of the council or commission, appoint such . . . firefighters . . . ."  Nothing in the statute limits a firefighter's probationary term to six months.

¶14    In enacting a law, the Legislature is presumed to have understood the ordinary and elementary rules of construction of the English language.  *State v. Miller* (1988), 231 Mont. 497, 517, 757 P.2d 1275, 1287 (citation omitted).  Comparing the two statutes above, it is clear the Legislature is aware of how to set a maximum probationary period, as it did regarding police officers, by using the "not more than" language.  It is equally clear the Legislature chose not to do so as to firefighters, instead setting a statutory minimum probationary period by using the words "first be made for a probationary term of 6 months."  We presume that if the Legislature had intended to create a statutory maximum probationary period for

6

firefighters, it would have done so expressly. *See MacMillan v. State Compensation Ins. Fund* (1997), 285 Mont. 202, 207, 947 P.2d 75, 78 (citation omitted). Moreover, in construing a statute, our job "is simply to ascertain and decide what is in terms or in substance contained therein, not to insert what has been omitted . . . ." Section 1-2-101, MCA. Thus, we cannot add to § 7-33-4122, MCA, the language contained in § 7-32-4113, MCA.

¶15 Hunter further asserts that a fair and reasonable reading of the Act prohibits "unilateral" expansion or extension of an employee's probationary period. He contends an affirmance of the District Court's ruling in favor of the City "will nullify the Act by creating a defense which will swallow the Act's remedial provisions in their entirety." We disagree.

¶16 In *Whidden v. John S. Nerison, Inc.*, 1999 MT 110, ¶ 19, 294 Mont. 346, ¶ 19, 981 P.2d 271, ¶ 19, we held that, under the plain meaning of § 39-2-904(2), MCA, "a nonprobationary employee may not be discharged without good cause." We went on to conclude the "employer must define the probationary period at the outset of an employment relationship, and the employer has the burden of showing that a probationary period was in effect at the time of a discharge." *Whidden*, ¶ 21. The *Whidden* conditions deter abusive expansion or extension of probationary periods after the fact, thereby avoiding the prospect of nullifying the protections provided to Montana workers by the Act.

¶17 In this regard, Hunter argues that the City failed to meet the *Whidden* conditions. While Hunter reasons that a probationary period which may be extended "purely as a matter of discretion" is

7

not one defined at the outset of employment, he mischaracterizes the manner and time in which his probationary period was established.

¶18 As discussed above, the statutory probationary period for firefighters is a minimum six-month term. Moreover, the Fire Department's policy manual augments statutory provisions regarding firefighters. To be promoted from probationary status to "confirmed Firefighter," a person must meet the following requirements:

> (1) Must have at least six (6) months experience as a Firefighter.
>
> (2) Must meet requirements as set forth in Montana State Fire Codes, Section 7-33-4122, Probationary Period. . . . .
>
> Confirmation shall be based on the following:
>
> (1) Must have written recommendation from first line supervisor and Battalion Chief prior to written examination.
>
> (2) Must successfully pass written examination with a minimum score of 75%.
>
> Examinations for confirmation will not be given unless candidates have fulfilled the requirements listed above.

*Great Falls Fire Department Policy, Personnel Section, Firefighter Promotion*. The Fire Department policy clearly requires a probationary firefighter to do more than just obtain six months of experience on the job to be promoted from probationary status to a confirmed firefighter. The first subsection (2) above tracks the statutory minimum six-month probationary period for firefighters, while the first subsection (1) clarifies that the six months' experience as a firefighter is a minimum. The additional

8

confirmation requirements also include a written recommendation from two of a probationary firefighter's supervisors and, finally, a 75% score on an examination not given unless the other requirements are met. These discrete requirements for promotion from probationary status, together with the statutory minimum term set forth in § 7-33-4122, MCA, disprove Hunter's suggestion that the extension of his probationary period was a matter of pure discretion. The terms of his probationary period were part of the Fire Department's policy at the time he was hired.

¶19 Further, as to whether the City defined the probationary period at the outset of its employment relationship with Hunter, the City filed two affidavits with the District Court. Ramona Jewett, a City personnel analyst, affirmatively averred that she conducted an employee orientation in which Hunter participated on March 1, 1996, and at which she explained that the firefighters' probationary period would last for six months unless extended. In addition, Young stated by affidavit that he conducted a two-day orientation program for new firefighters in March of 1996 in which Hunter participated. As part of that orientation program, Young outlined for the new firefighters "the progress and improvement required to succeed in advancing from a probationary firefighter to appointment of firefighter."

¶20 Hunter submitted an affidavit in which he stated "[t]o the best of my recollection, no one employed at the City of Great Falls, including Ramona Jewett, ever told me that my status as a probationary employee could be extended beyond my first six months

9

of employment." This statement by Hunter, which does not affirmatively meet the affidavit testimony of Jewett and Young, is not sufficient to create a material question of fact as to whether the City satisfied the *Whidden* condition that it define the probationary period at the outset of the employment relationship. Moreover, Hunter does not argue on appeal that a material issue of fact precluded summary judgment.

¶21 For the reasons stated above, we conclude the City defined the probationary period at the outset of its employment relationship with Hunter and met its burden of showing that a probationary period was in effect at the time of Hunter's discharge. We hold that the District Court did not err in granting summary judgment on the basis that, as a probationary employee, Hunter is not entitled to relief under the Act.

¶22 Did the District Court err in granting summary judgment on the basis that Hunter is not entitled to relief under § 1983?

¶23 Section 1983 provides civil redress for any person deprived "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . of any rights, privileges, or immunities secured by the Constitution and laws . . . ." Persons who have been deprived by government agents of due process in the termination of employment may be entitled to relief under § 1983 if they have a protected property interest in the employment. *Mysse v. Martens* (1996), 279 Mont. 253, 260, 926 P.2d 765, 769. Hunter contends his termination violated his civil rights under § 1983 by depriving him of a protected property interest in employment without substantive and procedural due process.

¶24 The fundamental premise for Hunter's § 1983 claim is that he was not a probationary employee at the time his employment was terminated. On that basis, he asserts entitlement to the benefit of our *Whidden* holding that, under the plain meaning of § 39-2-904(2), MCA, an employer may not discharge an employee without good cause outside the probationary period. *See Whidden*, ¶ 21. Because we have concluded that Hunter was a probationary employee at the time of his termination, the premise for his § 1983 claim evaporates. Nor does Hunter advance any other authority under which, as a probationary employee, he has a property interest in his employment. Consequently, we need not address his argument regarding whether, post-*Whidden*, the District Court erred in relying on *Medicine Horse v. Trustees, Big Horn County Sch. Dist.* (1991), 251 Mont. 65, 823 P.2d 230, *overruled in part in Whidden*, ¶ 21.

¶25 We hold the District Court did not err in granting summary judgment on the basis that, as a probationary employee, Hunter is not entitled to relief under § 1983.

¶26 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

11

Justice Jim Rice specially concurring.

¶27   I concur with the Court's holding herein, but under a different rationale.

¶28   The City of Great Falls has a charter form of government, adopting the self-governing system in 1986. Article VI of the City Charter establishes city government administration, and requires the City Commission to hire a City Manager, in whom the Charter confers executive authority, including the appointment, suspension and removal of city employees. Article VI, Section 4(l), City Charter. The Charter also establishes administrative departments which are subject to the control and supervision of the City Manager, including the City's Fire Department. Article VI, Section 5, City Charter, and Ordinance 2.16.060. Pursuant thereto, Fire Chief James Hirose, appointed and supervised by the City Manager, adopted a Fire Department Policy Manual, the provisions of which I find to be determinative herein.

¶29   Article XI, Section 5 of the Montana Constitution authorizes adoption of self-government charters by municipalities, and provides:

> (3) Charter provisions establishing executive, legislative, and administrative structure and organization are *superior to statutory provisions*. [Emphasis added.]

¶30   In accordance with our previous interpretation of this constitutional provision, the City's policy manual provisions governing the promotion and advancement of firefighters superseded § 7-33-4122, MCA. In *Woods v. City of Billings* (1991), 248 Mont. 254, 811 P.2d 534, we found that a city charter provision which vested power to repair sidewalks in the city administrator superseded § 7-14-4122, MCA, which authorized city councils to

12

regulate and repair sidewalks. Citing the superiority provision of Article XI, Section 5, we held that:

> The charter's delegation of the responsibility for sidewalk repairs to the City Administrator is superior to the statute's ability to grant the power for such repairs to the City Council.

*Woods*, 248 Mont. at 258, 811 P.2d at 536. Applying the same rationale to this matter, I conclude that the City Charter's delegation of fire department administration to the City Manager, and the requirements for promotion adopted pursuant thereto, are superior to the provisions of § 7-33-4122, MCA.

¶31 The City's promotion requirements provide that a candidate for "confirmed Firefighter" must have "at least" six months of experience as a firefighter, but additionally, must have written recommendations from the first line supervisor and the Battalion Chief, and must also pass a written examination, in addition to other requirements. City Firefighter Promotion Policy, adopted December 4, 1995. Pursuant to these requirements, I must conclude that Hunter did not progress beyond his probationary status, and was subject to at will termination of his employment.

¶32 For these reasons, I affirm the District Court.


/S/ JIM RICE

13

Justice Terry N. Trieweiler dissenting.

¶33 I dissent from the majority Opinion which first cites the correct rule of statutory construction and then completely ignores it as well as our controlling precedent in *Hobbs v. City of Thompson Falls*, 2000 MT 336, 303 Mont. 140, 15 P.3d 418. Instead, the majority Opinion adds language to § 7-33-4122, MCA, which is not there and engages in a game of semantics to deny Kelly Hunter his day in court.

¶34 Section 39-2-904(1)(b), MCA, provides:

> (1) A discharge is wrongful only if:
>
> . . . .
>
> (b) the discharge was not for good cause and the employee has completed the employer's probationary period of employment; [Emphasis added.]

¶35 In this case, Kelly Hunter's probationary period of employment with the Great Falls Fire Department was established by statute. Section 7-33-4122, MCA, provides in relevant part that:

> **Term of appointment of firefighters – probationary period.** Each appointment shall be first made for a probationary term of 6 months, and thereafter the mayor or manager may nominate and, with the consent of the counsel or commission, appoint such . . . firefighters, who shall thereafter hold their respective appointments during good behavior and while they have the physical ability to perform their duties. [Emphasis added.]

¶36 Section 7-33-4122, MCA, clearly establishes a six-month probationary period of employment for firefighters. It does not establish a "minimum six-month term" as stated by the majority in ¶

14

18. The majority added that language in direct contravention of its earlier admonition that:

> Moreover, in construing a statute, our job 'is simply to ascertain and decide what is in terms or in substance contained therein, and not to insert what has been omitted. . . .' Section 1-2-101, MCA.

Majority Opinion at ¶ 14.

¶37 In *Hobbs*, the plaintiff had been hired by the City of Thompson Falls as a police officer on November 29, 1996, and was terminated more than a year later on December 15, 1997. The City agreed that he had been terminated without cause but contended he had not completed his probationary period. The district court concluded he was still a probationary employee at the time of his termination because he had not yet been confirmed as a permanent member of the police force. We concluded otherwise. In our Opinion, we stated that because the Wrongful Discharge From Employment Act prohibits discharge of an employee following his probationary period without good cause and because § 7-32-4113, MCA, limits a police officer's probationary period to not more than one year, confirmation by the city council or commission cannot be denied following the one-year period without good cause. *Hobbs*, ¶ 18.

¶38 The majority states there is a "crucial difference" between the probationary employment statutes applying to police officers and firefighters. The majority concludes that because the statute which pertains to police officers provides for a probationary period of employment of "not more than 1 year" and the statute pertaining to firefighters provides for a "probationary term of 6 months," a firefighter's probationary period can actually be more

15

than six months. The majority is not impressed by the fact that the statute provides for nothing other than a six-month period of probationary employment for firefighters. Instead, the majority talks about the local fire department's policy manual regarding promotion to "confirmed firefighter." However, those criteria simply relate to whether employment should be extended past the probationary period or whether there is good cause for termination following completion of the probationary period. In this case, Hunter was employed past the probationary period and whether there was good cause for his determination is a question of fact which has not been decided by the District Court. Furthermore, where inconsistent with statutory law, local administrative rules are preempted. Therefore, I find nothing persuasive about the majority's discussion of Great Falls Fire Department's policy manual.

¶39 Aside from its disregard of statutory law and our precedent, the majority Opinion does great harm to the substantive rights provided to employees under Montana law. Montana law as set forth in the Wrongful Discharge from Employment Act clearly intends that employers be allowed to hire employees during a probationary period without any commitment and that, during that time, the employer retain the right to terminate the employee with or without cause. However, once an employer has made a decision to retain an employee past the probationary period, Montana law clearly prohibits terminating that employee without good cause. If employers are allowed to extend the probationary period beyond what is agreed to

16

with the employee at the outset of the employment or beyond what is permitted by statute, then the statutory scheme is meaningless and the protective purpose of the Wrongful Discharge From Employment Act can be circumvented at will.

¶40 For these same reasons, I conclude that Hunter had a property interest in his employment which could not be denied without due process of law.

¶41 Therefore, I dissent from the majority Opinion. I would reverse the summary judgment order of the District Court and remand this case to the District Court for further proceedings to determine whether there was good cause for Hunter's termination from employment with the Great Falls Fire Department.

/S/ TERRY N. TRIEWEILER

Justice Jim Regnier joins in the foregoing dissent.

/S/ JIM REGNIER

17