No. 01-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 266

BILL FAVEL, JOHN PITZER, JOE
LaMERE, TOBY LaMERE, and
ALVIN BELGARDE,

        Plaintiffs/Appellants,

   v.

AMERICAN RENOVATION AND
CONSTRUCTION CO., a California
corporation; JOHN DOES I and II,

        Defendants/Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
                     In and for the County of Cascade,
                     The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

         Lawrence A. Anderson (argued), Great Falls, Montana

     For Respondents:

         Marcia Davenport (argued), Crowley, Haughey, Hanson, Toole & Dietrich,
         Helena, Montana; Neil Westesen, Crowley, Haughey, Hanson, Toole &
         Dietrich, Bozeman, Montana

                            Heard:  March 12, 2002
                    Submitted:  March 19, 2002
                     Decided:  November 26, 2002

Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     This case was brought by a group of construction workers (Workers) who performed labor under a federal contract (Contract) between the American Renovation and Construction Company (ARC) and the United States Air Force (USAF or Air Force) to construct military housing at Malmstrom Air Force Base (Malmstrom AFB) in Great Falls, Cascade County, Montana. The Workers sued for breach of contract, alleging that they were not paid prevailing wages under the federal Davis-Bacon Act as required by the Contract. The Eighth Judicial District Court of Cascade County dismissed the suit on June 12, 2001, ruling that the Davis-Bacon Act did not provide the Workers with a private right of action; therefore, it lacked jurisdiction to hear the Workers' claims. We reverse.

## ISSUES

¶2     A restatement of the issue presented by the parties is whether the Montana District Court has subject matter jurisdiction to hear and determine Workers' common law claims for breach of a Contract under which they were guaranteed wages based upon wage standards established by the federal Davis-Bacon Act.

## FACTUAL BACKGROUND

¶3     In March 1998, the USAF and ARC entered into a Contract under which ARC would construct military housing at Malmstrom Air Force Base in Great Falls, Cascade County, Montana. While the Contract was not provided for this Court's review, it is undisputed that the Contract required ARC to pay its laborers federal Davis-Bacon Act wages (hereinafter wages). Subsequently, ARC entered into subcontracts with Baer Construction and Four Winds Construction. Under ARC's Contract with the Air Force, ARC was required to include in any subcontracts the provision that all

2

subcontractors working on the project would pay their laborers in accordance with the Davis-Bacon Act. The contracts between ARC and its subcontractors were not provided for our review, but it is undisputed that these contracts included the required Davis-Bacon wage provision.

¶4    Workers are former employees of Baer Construction (Baer) and/or Four Winds Construction (Four Winds)[1] who worked on the Malmstrom AFB project as iron workers, carpenters, cement masons and other "skilled trades." Workers claim they were improperly paid unskilled laborer wages. Additionally, Workers maintain that when they complained to Baer that they were not being paid in accordance with the contract between Baer and ARC, Baer fired them. They then began working for Four Winds and claim that Four Winds likewise failed to pay them the skilled wages required under Four Winds' contract with ARC. (We note, however, that no precise allegations were made against Four Winds nor were any administrative decisions made pertaining to Four Winds.) In November 1998, the Workers complained to ARC that ARC's subcontractors were not paying them in accordance with the wage provisions of their contracts with ARC. Prior to this November meeting between Workers and ARC, and subsequent to it, ARC consistently represented to the USAF that it and its subcontractors were paying all laborers appropriate Davis-Bacon wages.

¶5    Workers complained to the USAF Contracting Officer (Contracting Officer) who agreed that the Workers should have been paid "skilled laborer" wages. The Contracting Officer notified ARC that it was ARC's responsibility to insure that subcontractors' employees were accurately paid in accordance with the contractually-prescribed Davis-Bacon job classifications and wage rates. There is no evidence in the record that the Contracting Officer notified the DOL of the complaint or

---

[1]Baer and Four Winds are referenced in the caption of this case as John Does I and II because Workers claim that these companies are not legal entities authorized to do business in Montana.

3

consulted with the DOL regarding Workers' claims. ARC forwarded a copy of the Contracting Officer's letter to Baer and instructed Baer to resolve the matter as directed by the USAF. Baer refused to do so despite multiple requests by ARC. Subsequently, ARC withheld funds that it would have paid to Baer and dispersed these funds to the underpaid Workers. The total amount paid by ARC, however, was significantly less than the amounts the USAF and the Workers claimed were owed. The above facts provide a short factual summary but additional facts will be discussed as necessary in our analysis.

## PROCEDURAL HISTORY

¶6      Workers filed a law suit in June 1999, in the United States District Court, Great Falls Division, against ARC, ARC's surety, St. Paul Fire and Marine Insurance Company, and ARC's subcontractors. Workers sought damages directly from ARC and its subcontractors under the Davis-Bacon Act and from ARC's surety under the Miller Act. The federal district court judge characterized Workers' claim as a claim for back wages under the Davis-Bacon Act. The court concluded that 40 U.S.C. § 276a of the Davis-Bacon Act did not give Workers a private right of action but that 40 U.S.C. § 276a-2(b) did, vis-à-vis a Miller Act claim. The federal court, therefore, stayed the Miller Act proceeding, holding that a yet-to-be-obtained DOL wage determination was a condition precedent to such a proceeding. Workers, having presented extensive USAF documentation of underpayment to the federal court to no avail, then dismissed their federal action without prejudice and sought relief in state court. The Workers thereafter pursued their state remedies and did not reinstitute their federal proceeding before the statute of limitations expired.[2]

---

[2] Voluntary dismissal of a federal action without prejudice does not toll the statute of limitations. *Brown v. Hartshorne Public School Dist. No. 1* (10th Cir. 1991), 926 F.2d 959 ("It is hornbook law that, as a general rule, a voluntary dismissal without prejudice

¶7    Workers sued ARC and its subcontractors in the District Court of the Eighth Judicial District, Cascade County. They sought recovery on various common law grounds including, but not limited to, breach of contract, negligence, and wrongful discharge. ARC moved to dismiss the complaint on the grounds that it failed to state a claim for which relief may be granted. The state court dismissed the complaint without prejudice for lack of subject matter jurisdiction holding that the Davis-Bacon Act did not grant Workers a private right of action. The state court agreed with the federal court that Workers had failed to exhaust their administrative remedies. Workers filed a timely appeal.

**STANDARD OF REVIEW**

¶8    The State District Court dismissed this case for lack of subject matter jurisdiction. "Motions to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Winslow v. Montana Rail Link, Inc.*, 2000 MT 292, ¶ 13, 302 Mont. 289, ¶ 13, 16 P.3d 992, ¶ 13 (citing *Hilands Golf Club v. Ashmore* (1996), 277 Mont. 324, 328, 922 P.2d 469, 471-72). "In considering such motions, the complaint is construed in the light most favorable to the plaintiff and all allegations of fact contained therein are taken as true. The District Court's determination that it did not have jurisdiction over this case is a conclusion of law." *Winslow*, ¶ 13 (citing *Pike v. Burlington N.R.R. Co.* (1995), 273 Mont. 390, 392-93, 903 P.2d 1352, 1353). "We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct." *Winslow*, ¶ 13 (citing *Hilands Golf Club*, 277 Mont. at 328, 922 P.2d at 472).

leaves the parties as though the action had never been brought." (citation omitted)).

5

**DISCUSSION**

¶9     The primary question before this Court is whether the Montana District Court has subject matter jurisdiction to hear and determine Workers' common law claims for breach of a contract under which they were guaranteed wages based upon wage standards established by the federal Davis-Bacon Act.

¶10     ARC argues that because all of Workers' claims are based on failure to pay wages established by the Davis-Bacon Act, Workers are limited to Davis-Bacon-prescribed remedies. It maintains that the **state district court correctly held that it did not have jurisdiction over Workers' claims because there is no "private right of action" under the Davis-Bacon Act. In other words, Workers may not sue a contractor or subcontractor in state or federal court, under the Davis-Bacon Act, for a violation of the Davis-Bacon Act. Rather, ARC maintained and the state court agreed, Workers must first obtain a DOL determination that a violation occurred, that Workers are owed money, and how much money each individual Worker is due. Upon an administrative determination that Workers had been underpaid, Workers would be paid from any funds that had been withheld in accordance with the regulations. If such withheld funds were insufficient to pay the full amount due, Workers could then sue ARC's surety under the Miller Act[3].**

¶11     **Workers, on the other hand, claim that this is not a "private right of action" case but rather a "preemption" case. Workers seek to enforce a labor contract that**

_____

[3] The Miller Act requires that before a contractor may be awarded a federal construction contract, the contractor must post a payment bond for the protection of persons providing labor and material to the construction project. 40 U.S.C. § 270a(a)(2).

**incorporated the Davis-Bacon Act and included wages established under the Act. Therefore, they are seeking a state common law remedy for breach of contract. Thus, the question is not whether they have the right to bring a private action under the Davis-Bacon Act, but rather, is whether the Davis-Bacon Act expressly or impliedly preempts alternative or supplemental state remedies.**

¶12    Additionally, Workers argue that, in this case, an administrative remedy is non-existent, or, at best, inadequate. Workers claim that numerous relevant administrative decisions were made in their favor and that ARC and Baer accepted these decisions without challenge or a request for DOL review. Therefore, Workers argue, ARC and Baer are estopped from now claiming that additional unexhausted administrative remedies exist. The District Court did not address these issues.

*The Davis-Bacon Act*

¶13     The Davis-Bacon Act, 40 U.S.C. § 276(a), *et seq*., was passed in 1931 during the Depression to protect workers on federal construction projects.   Under the Act, the Secretary of Labor sets minimum wages for various job classifications that reflect "prevailing wages" in the area of the project.  The Act mandates that no contractor may pay less than these prevailing wages to their employees working on any construction project over $2,000 to which the United States is a party. This prevents companies from competing for federal contracts using bids based on importing laborers from distant areas who would work for lower wages than local laborers.  *See* 40 U.S.C. § 276a(a).  *See also, Vulcan Arbor Hill Corp. v. Reich* (D.C. Cir. 1996), 81 F.3d 1110, 1111 (citation omitted).  Numerous courts have held that the Act was designed specifically to protect the interests of laborers.  *See*, *U. S. v. Binghamton Construction Co.* (1954), 347 U.S. 171, 177 and 178, 74 S.Ct. 438, 441 and 442, 98 L.Ed. 594, 599 and 600; *Thompkins v. Fuller* (1983), 205 Mont. 168, 667 P.2d 944; *Building and Const. Trades Dept., AFL-CIO v . Reich* (D.C. Cir. 1994), 40 F.3d 1275.

¶14     After the Davis-Bacon Act was passed into law, the Department of Labor promulgated detailed regulations for its implementation.  29 C.F.R. §§ 5, 6, and 7.  In addition to the regulations defining how the Secretary of Labor will establish prevailing wage rates, the regulations also dictate specific contract provisions that must be included in federal construction contracts, provide debarment procedures for contractors who violate the Davis-Bacon Act, and identify those entities who may initiate a proceeding in the event of a wage dispute.  29 C.F.R. §§ 5.5, 5.12 and 5.11 respectively.

**¶15     The state court held that Workers cannot sue ARC and Baer in state court but rather they must avail themselves of the administrative remedies set out in the DOL's**

**regulations. The court stated that Workers must obtain a DOL determination that wages are due, then seek recovery under the Miller Act. Workers claim they have utilized the administrative procedure extensively, without remedy. The facts set forth below support the Workers' claim.**

¶16    Baer and ARC entered into their contract in March 1998. At some time between March 1998 and November 1998, Workers complained to Baer that they were performing skilled labor, as defined by the DOL job classifications applicable to the construction project, but were being paid unskilled laborer wages. Baer fired them. In November 1998, Workers met with representatives of ARC, the Montana Labor Management Alliance (MLMA) and Baer. They complained that Baer was breaching its contract with ARC by not paying contractually-agreed upon wages to its skilled laborers and that Baer had fired them for complaining about it. The MLMA representative suggested that ARC submit a request to DOL for "new" job classification and wages rates for jobs performed by the Workers. He said he would inform the meeting attendees of the DOL's determination and they could accept it or appeal it at that time. ARC submitted the classification/wage request to DOL in December 1998. No USAF or DOL response to this request was provided to this Court.

¶17    By early April 1999, the USAF Contracting Officer had received notice of the complaints. She responded by sending a letter dated April 9, 1999, to ARC in which she notified ARC that, as general contractor, it was ARC's responsibility to insure that its subcontractors complied with the Davis-Bacon Act. She noted that ARC was responsible for reviewing the payrolls for discrepancies and having those discrepancies corrected prior to submitting them to the USAF. The Contracting Officer noted that, "[a]ccording to the Department of Labor," the work being performed by the

9

complaining Baer laborers fell within specific job classifications with prescribed wages. She determined that Workers and other laborers had been underpaid by Baer. She included in her letter to ARC a list of Baer employees, which included Workers, who had been underpaid. She classified them within the correct DOL job classification and calculated the amount of unpaid wages each of these employees was owed by Baer.

¶18    Also on April 9, 1999, ARC sent a letter to Baer informing Baer that it had received a determination from the MLMA that Baer had underpaid the complaining laborers. ARC notified Baer that failure to pay wages in accordance with the Davis-Bacon Act was a direct breach of their contract. It instructed Baer to fully compensate the underpaid employees in accordance with the MLMA's directive.

¶19    In May and June 1999, ARC submitted several other requests for "new" job classifications to the DOL. On the DOL request form, ARC recommended hourly wage rates for these "new" job classifications. The Contracting Officer, after conferring with DOL, notified ARC that each of its requests was denied because job classifications for the job descriptions included in the requests were not "new" but already existed and were part of the project Contract. The "new" job classifications ARC sought were for work performed by the Workers, as well as other laborers. The hourly wage rate recommended by ARC in its requests was lower than the hourly wage rates assigned under the Davis-Bacon Act to the existing job classifications. ARC did not challenge or seek further DOL review of the USAF and DOL's denial of its job classification and wage rate requests.

¶20    Immediately thereafter, on July 9, 1999, ARC sent a letter to Baer attaching the Contracting Officer's April 9, 1999 letter and instructing Baer to pay the listed employees in accordance with the USAF letter. Baer refused to do so. Also in July 1999, ARC notified the Contracting Officer that it

was processing "an equitable amount" to be paid to the "parties concerned" and that a settlement was being negotiated. **Subsequently, ARC withheld some funds due to Baer and paid these funds to Workers. These funds, however, were insufficient to pay Workers the amount of money owed to them according to the Contracting Officer. No settlement was ever reached.**

### *DOL Regulations*

¶21    The DOL regulations implementing the Davis-Bacon Act contain specific provisions and grant broad authority to federal contracting officers. The regulations dictate precise language that must be included in each federal construction project contract. 29 C.F.R. § 5.5. Section 5.5(a)(1)(ii)(A) authorizes the contracting officer for the federal agency to approve or disapprove any new job classifications, wage rates and fringe benefits applicable to the project. If the contractor or the laborers to be employed in the classification disagree with the contracting officer's determination, the contracting officer is required to notify the DOL and seek a DOL determination. 29 C.F.R. § 5.5(a)(1)(ii)(C). In the case at bar, the Contracting Officer conferred with the DOL before making the final decision to deny the requests. ARC did not challenge or seek further review of the Contracting Officer's and DOL's denial. We conclude that these decisions became final agency determinations.

¶22    The regulations also address enforcement of the Davis-Bacon Act. The regulations impose upon the federal contracting agency the responsibility to ensure that the contract provisions in 29 C.F.R. § 5.5 are included in each appropriate contract. In other words, the contracting officer has the authority to determine when the Davis-Bacon Act applies to a federal project. 29 C.F.R. § 5.6(a)(1).

¶**23**    The regulations require that the federal contracting agency, in this case the USAF, "shall

11

cause such investigations to be made as may be necessary to assure compliance with the labor standards clauses required by § 5.5 . . . . Complaints of alleged violations shall be given priority." Additionally, contracting officers are instructed that "particular care shall be taken to determine the correctness of classifications." 29 C.F.R. § 5.6(a)(3). This plain language indicates that when the federal contracting agency is aware of allegations of Davis-Bacon wage violations, the contracting agency undertakes an administrative investigation to determine if violations have occurred and, if so, what monies are owed to which persons. The DOL provides to contracting agencies investigatory material to utilize during these authorized contractor examinations, including material with which to compute back wages and liquidated damages based upon their investigations. 29 C.F.R. § 5.6(a)(4). **While the regulatory language appears to contemplate, if not impose, a mandatory duty of investigation, the record in this case does not reveal to what extent a USAF investigation occurred. Nonetheless, the Contracting Officer reached the decision that the Act had been violated and determined what monies were owed to which persons. Under the plain language of the regulations, she had the authority to make this determination. Again, ARC and Baer did not challenge her authorization or determination of violation.**

¶24   Moreover, while the regulations provide that the USAF "shall" withhold sufficient funds to pay the laborers in accordance with the contract, should the contractor fail to do so or fail to submit payroll records (29 C.F.R. §§ 5.5(a)(2), 5.5(a)(3)(iii) and 5.9), **the statute makes such withholding on the part of the federal contracting agency discretionary. 40 U.S.C. § 276a(a). Whether discretionary or mandatory, the USAF Contracting Officer had the**

12

**unilateral authority to make such a decision, but there is no evidence that such funds were withheld in this case. When the Air Force notified ARC that ARC was responsible for paying the Workers if Baer failed to do so, there is no mention in the letter that the USAF Contracting Officer was withholding or would withhold payments to ARC with which to pay Workers if ARC did not. ARC accepted the USAF's determination of its responsibility and did not seek a DOL review or investigation.**

¶25 Furthermore, the regulations authorize the federal contracting agency to terminate the contract in the event the contractor or subcontractor breach the contract by failing to comply with any of its terms. 29 C.F.R. § 5.9. *See also,* 29 C.F.R. § 5.5(a)(7). Typically, once matters have reached this point, the contracting officer withholds accrued funds due to the contractor and administratively diverts those funds to the underpaid laborers. H**owever, and despite the USAF Contracting Officer's determination that the subcontractor breached the contract, the USAF did not fire ARC. Rather, it issued a determination of violation, defined the remedy and instructed its implementation. Had the USAF withheld funds with which to pay Workers, upon its recognition that ARC failed to pay them the amount owed based on the USAF's determination, it would have been obligated to then take the actions necessary to provide payment to the Workers. The USAF, which supported the Workers' claims from the onset, did not indicate the availability of such funds. This supports Workers' speculation that no funds were withheld by the USAF with which to pay Workers.**

¶26 In addition, 29 C.F.R. § 5.11 sets forth the procedure for resolving disputes of fact or law

concerning payment of prevailing wage rates. Significantly, these dispute procedures may be initiated by the DOL Administrator, the federal contracting agency, or upon request by the contractor or subcontractor. Unlike § 5.5(a)(1)(ii)(C) (which gives laborers dispute rights over job classifications in the contract), § 5.11 does not list aggrieved laborers among those who may initiate wage dispute proceedings.

¶27     This omission led the Second Circuit Court of Appeals in *Chan v. City of New York* (1993), 1 F.3d 96, 106, to determine that laborers who were to be paid Davis-Bacon wages under § 5310 of the Housing and Community Development Act of 1974, 42 U.S.C. § 5310 (HCDA), could invoke a remedy under 42 U.S.C. § 1983 because "[t]he laborers who are beneficiaries of § 5310 were not and are not allowed to initiate administrative dispute-resolution proceedings [under 29 C.F.R. § 5.11]. Nor is there any provision for a laborer to obtain judicial review of any administrative decision." The Second Circuit, therefore, concluded that the regulatory scheme under the HCDA and the Davis-Bacon Act was not so comprehensive as to preclude other remedies.

¶**28**     By contrast, in *Reidell v. U.S.* (Fed. Cl. Ct., 1999), 43 Fed. Cl. 770, plaintiff Reidell, a laborer for a subcontractor, contacted the DOL directly and requested the agency to determine whether the federal contract under which he was working was subject to the Davis-Bacon Act. The contracting officer for the project had concluded that the Davis-Bacon Act did not apply. The DOL reviewed the project and determined that the Act did apply and that laborers on the project should be paid Davis-Bacon wages retroactive to the commencement of the project. An important distinction between *Reidell* and the case at bar is that Reidell was seeking a ruling as to whether the Davis-Bacon Act applied to a specific contract. The applicability of the Davis-Bacon Act is clearly a

14

decision within the DOL's expertise and purview. The *Reidell* court did not cite the regulatory provisions relied upon by Reidell to initiate the DOL's review. However, under 29 C.F.R. § 5.5(a)(1)(ii)(C), laborers have the express right to challenge a contracting officer's pre-contract decisions regarding job classifications and wages rates, and 29 C.F.R. § 1.6(f) gives the DOL the express authority to amend an existing contract to provide for erroneously-excluded Davis-Bacon wages and make those wages retroactive. *Reidell*, therefore, is inapposite to the case at bar because there is no question that the Davis-Bacon Act applied to this Contract nor were there any other pre-contract issues to be resolved. **Workers are seeking to be paid wages that all parties agreed to pay in the Contract and that the federal contracting agency has determined are due.**

¶29    Under the plain language of the regulations, laborers may dispute pre-contract issues but do not have the express right to initiate proceedings concerning factual or legal disputes over the payment of prevailing wages. The USAF, ARC and Baer all had the express right to initiate the formal DOL dispute resolution process. However, none of them did.

¶30    Lastly, 29 C.F.R. § 5.13 requires that "[a]ll questions relating to the application and interpretation of wage determinations . . . shall be referred to the Administrator for appropriate ruling or interpretation." This provision is inapplicable to Workers because they had no questions relating to the application or interpretation of wage determinations. If ARC or Baer had such questions, they should have sought a ruling or interpretation from the Administrator.

¶31    The Workers took all the proper steps in their attempt to resolve this matter. The first step, complaining to Baer, got them fired. The second step, complaining to ARC, appeared to fall on deaf ears for several months. Finally, the third step, USAF involvement, resulted in a determination by the Contracting Officer authorized to make such a determination, that Baer and ARC were in

15

violation of the Davis-Bacon provisions of their contracts and were both equally responsible for paying the Workers the amounts determined by the Contracting Officer. Neither company, though both were adversely affected by the USAF's decision, challenged it.

**¶32** Every decision made by the USAF supported the Workers' claims. From the Workers' perspective, there was no dispute of fact or law as to the proper classification and wage rate due the Workers. The Air Force calculated that and set it forth in a letter for ARC. **Under these circumstances, there was no reason for the Workers to initiate a DOL investigation, nor under the plain language of 29 C.F.R. § 5.11 were they expressly authorized to do so. On the other hand, each USAF/DOL ruling was adverse to ARC and Baer but neither ARC nor Baer challenged any of the adverse decisions. Rather, ARC accepted them and demanded that Baer honor the USAF rulings. Baer refused but did not initiate a DOL determination as it was authorized to do under 29 C.F.R. § 5.11. Had ARC or Baer held information that rebutted the USAF's decision in the matter, presumably they would have submitted it to the Contracting Officer.**

**¶33** In sum, neither ARC nor Baer have demonstrated that any further administrative review was either necessary or available to the complaining Workers under the clear-language of 29 C.F.R. § 5.11. Moreover, they have failed to even argue that such further administrative review would or should have resulted in a different conclusion than that drawn by the USAF Contracting Officer. On these facts, we therefore conclude that **ARC and Baer are estopped from arguing that Workers failed to seek administrative review of the dispute.**

**¶34** It is axiomatic that it is the contracting parties who are adversely affected by a federal

16

contracting officer's or DOL's ruling who appeal the adverse ruling. The party benefitted by the ruling has no reason to do so. Surely, neither law nor reason requires the "winning party" to initiate an appeal in order to recover the proceeds of the victory. More to the point, when the adversely affected parties fail to exercise their statutory right of review, they will not be heard to blame the Workers for failing to appeal from a favorable ruling on their claim.

¶35 While 29 C.F.R. § 5.11 does not give laborers the express right to initiate DOL dispute resolution proceedings, this does not mean that the laborers have no obligation to pursue the remedies that are available to them. Because § 5.11 expressly authorizes the federal contracting officer, contractors and subcontractors to initiate dispute resolutions, it is implicit that, if laborers have a "dispute" about wages or job classifications, they must bring their complaints to the attention of these entities so that resolution of the dispute may either be accomplished informally or through the formal DOL dispute resolution process. It is only when this process fails to result in full payment to the affected workers, as it did in this case, that our holding here will provide such workers relief.

¶36 Under the circumstances presented here, we hold that the Workers exhausted the processes available to them. They **traveled the "administrative path" only to be thwarted and frustrated for over two years. Unfortunately this "administrative path" did not result in a formal DOL determination, without which the state district court concluded Workers were precluded from seeking recovery under the Miller Act. While we disagree with the District Court's conclusion, based upon our determination here that the authorized federal contracting party's administrative decision became final when**

17

**the parties adversely affected by it failed to pursue review of it, the question remains whether Workers have an alternate remedy or whether they must bear the loss for the other parties' breaches of contract and violations of the law. We therefore must determine whether Workers' claim for relief in the State District Court, once they have demonstrated exhaustion of the Davis-Bacon regulatory requirements, is preempted by the Davis-Bacon Act.**

*Preemption*

¶37     ARC maintains that Workers may not seek relief in state court but, upon exhaustion of their administrative remedies, are limited to bringing a Miller Act claim in federal court. Workers assert that unless the Davis-Bacon Act preempts a state action, they are not so limited and may seek contract enforcement before the state court.

¶38     Workers claim they are not seeking to enforce the Davis-Bacon Act labor standards but are seeking to enforce a contract that includes specific Davis-Bacon wage provisions. This distinction is subtle but important. Workers are not challenging the job classifications established by the DOL for the construction project, nor are they challenging the wages or benefits assigned by the DOL to these job classifications. Workers are seeking to enforce a contract requiring that they be paid pre-determined wages for well-defined job duties. The USAF Contracting Officer determined, based upon their job descriptions, to which classification they belonged and the proper wage rate for that classification. She determined the number of hours the Workers performed the tasks for each job classification and the total wages each Worker was underpaid. Neither ARC nor Baer, both of whom were authorized to

18

dispute the USAF's findings in this regard, disputed or challenged these findings with DOL. Therefore, there are no disputed facts that require the specialized expertise of DOL. This is a simple breach of contract action. We must now decide, however, whether the Davis-Bacon Act preempts state law and forecloses the opportunity to use state remedies as an alternative or supplement to federal or administrative remedies.

¶39 Both the United States Supreme Court and this Court have plainly held that preemption is not easily favored. "**Because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.**" *Sleath v. West Mont Home Health Services,* 2000 MT 381, ¶ 23, 304 Mont. 1, ¶ 23, 16 P.3d 1042, ¶ 23 (citing *Medtronic, Inc. v. Lohr* (1996), 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715 and *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422). This presumption against preemption "can only be overcome by evidence of a 'clear and manifest' intent of Congress to preempt state law." *Sleath*, ¶ 61 (citing *Wisconsin Public Intervenor v. Mortier* (1991), 501 U.S. 597, 610, 111 S.Ct. 2476, 2484, 115 L.Ed.2d 532, 546).

¶40 In determining whether a federal law preempts a state law, including a common law cause of action, we must determine whether Congress intended the federal law to preempt state law. There are three ways in which state law may be superseded by federal law. First,

19

the legislature may expressly include in the federal statute a preemption clause, making it clear that state law will not apply in the area governed by the federal statute. Second, congressional intent to preempt state law in a particular area may be implied where the regulation of the area is so comprehensive that it is reasonable to conclude that Congress intended to "occupy the field" and to leave no room for supplementary state regulation. Lastly, federal law may supersede state law when the state law actually conflicts with the federal law. This type of conflict manifests itself as an inability to comply with both the federal and state law, or because "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ***Hillsborough County v. Automated Medical Labs.* (1985), 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721;** *see also, **Suislaw Concrete Const. v. Wash., Dept. Of Transp.* (9th Cir. 1986), 784 F.2d 952, 955.**

¶41    We first consider express preemption. The Davis-Bacon Act itself does *not* contain an express state law preemption clause; therefore, we will not presume that Congress intends the Davis-Bacon statute to preempt state law. When Congress intends a statute to supersede state laws, it knows how to say so and does so expressly. *See, e.g.,* Employee Retirement Income Security Program, 29 U.S.C. § 1144(a) (2001) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."). *See also,* Federal Election Campaign Act, 2 U.S.C. § 453 (2001); Uniform Time Act of 1966, 15 U.S.C. § 260(b) (2001);

Armored Car Industry Reciprocity Act, 15 U.S.C. § 5903 (2001).

¶42    We next consider whether the DOL regulations purport to preempt state law.  While the U.S. Supreme Court has stated on several occasions that a**n agency's preemption regulations have no less preemptive effect than statutes,** *Fidelity Federal Sav. & Loan Assn. v. De la Cuesta* **(1982), 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675, the fact is there is no express preemption provision in the Davis-Bacon DOL regulations.** Therefore, we continue our analysis to determine if the regulations imply preemption or if conflict preemption exists.

¶**43**    ARC argues that the DOL's regulations "imply" that Congress intended to occupy the entire field relating to Davis-Bacon wages and left no room for state enforcement of any dispute relating to the Davis-Bacon Act.  While it is well established that federal regulations may preempt other laws or remedies, the U.S. Supreme Court **has issued this caution:**

> We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes.  As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress.  To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive.  Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence **(citation omitted).**
>
> **Moreover, because agencies normally address problems in a detailed manner and can speak through a variety of means, including regulations, preambles, interpretive statements, and responses to comments, we can expect that they will make their intentions clear if they intend for their regulations to be exclusive. Thus, if an agency does not speak to the question of pre-emption, we will pause before saying that the mere volume and complexity of its regulations indicate that the agency did in fact intend to pre-empt.**

21

*Hillsborough*, 471 U.S. at 717-18, 105 S.Ct. at 2377, 85 L.Ed.2d at 724; *Suislaw*, 784 F.2d at 957.

¶44    The Court reiterated these concerns in *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 908-09, 120 S.Ct. 1913, 1940, 146 L.Ed.2d 914, 949, when it stated:

> While the presumption [against preemption] is important in assessing the pre-emptive reach of federal statutes, it becomes crucial when the pre-emptive effect of an administrative regulation is at issue. Unlike Congress, administrative agencies are clearly not designed to represent the interests of States, yet with relative ease they can promulgate comprehensive and detailed regulations that have broad pre-emption ramifications for state law. We have addressed the heightened federalism and nondelegation concerns that agency pre-emption raises by using the presumption to build a procedural bridge across the political accountability gap between States and administrative agencies. Thus, even in cases where implied regulatory pre-emption is at issue, we generally "expect an administrative regulation to declare any intention to pre-empt state law with some specificity" (citation omitted).

*See also*, *Fidelity Fed. Sav. & Loan Assn.*, 458 U.S. at 154; *R.J. Reynolds Tobacco Co. v. Durham County* (1986), 479 U.S. 130, 149, 107 S.Ct. 499, 511, 93 L.Ed.2d 449, 467.

¶45    The DOL regulations are detailed and complex - they define relevant terms, they address contract provisions, they instruct contractors on payroll reporting and permitted apprentice and trainee programs, they dictate overtime requirements, they set forth debarment proceedings, and they describe how to initiate a dispute concerning payment of wages. They do <u>not</u> speak to the question of preemption, however. It is reasonable to presume, therefore, with all the other detailed mandates of the regulations, that had DOL intended the regulations to preempt other laws and remedies, such an express provision would have been inserted.

¶46    Moreover, the regulatory section regarding disputes over the payment of wages does not even give an aggrieved laborer the express right to initiate a proceeding. Presumably, if 29 C.F.R. § 5.11 had meant for an "employee" or "laborer" to have such a right, the regulation would have

22

expressly provided so.  Instead, the regulations expressly authorize the laborer only to complain to the contracting officer if the laborer disagrees with the establishment of job classifications and wage rates to which he or she would be affected.  29 C.F.R. § 5.5(a)(1)(ii)(C).  Absent the availability of an express regulatory remedy for laborers seeking payment of established wages, we are loathe to imply preemption of other remedies.

¶47    We conclude, as did the U.S. Supreme Court in *Geier*, 529 U.S. 861 at 908-09, that regulatory preemption will not be implied absent some declaration of an intent to preempt.  Such a declaration being absent here, we find no implied preemption in the Davis-Bacon regulations.

¶48    **Finally, we analyze whether state law remedies would actually conflict with the Federal Act.  There are two types of conflict preemption: (1) "where it is impossible to comply with both state and federal requirements"; and (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."** *Williamson v. General Dynamics Corp.* **(9th Cir. 2000), 208 F.3d 1144, 1152 (citing** *Industrial Truck Ass'n, Inc. v. Henry* **(9th Cir. 1997), 125 F.3d 1305, 1309).  "In determining whether a state law conflicts with federal statutes or regulations, the federal-state conflict must be actual and unavoidable, not merely possible."** *Seigel v. American Sav. & Loan Assn.* **(1989), 210 Cal.App.3d 953, 965, 258 Cal.Rptr. 746, 752 (citation omitted).  Additionally, courts must "determine whether, under the circumstances of [a] particular case, [that State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."** *Jones v. Rath Packing Co.* **(1977), 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604, 614**

**(citations omitted). ARC argues that allowing a state cause of action to enforce wage provisions in an employment contract based upon the Davis-Bacon Act results in an irreconcilable conflict between the federal law and the state action. In this case, we disagree for three reasons.**

¶49    First, DOL's dispute regulations prescribe how factual and legal disputes concerning payment of wages are to be resolved through administrative proceedings. 29 C.F.R. § 5.11. Here, the amount of wages and the job classifications have already been established and agreed upon by the contractors and subcontractors. However, even if ARC's and Baer's failure to pay contractually-agreed upon wages qualifies as a dispute described by § 5.11, the fact remains that the regulation does not give the Workers the express right to initiate the administrative proceedings. Therefore, granting a remedy to an aggrieved laborer who has no express administrative remedy does not frustrate the regulations.

¶50    Second, the purpose of the Act is to guarantee that workers on federal construction projects are paid a specified minimum wage. Allowing the Workers here the right to enforce the wage provisions in the Contract in state court will not impose a hardship on the contractors. Because contract enforcement occurs long after contract bidding and acceptance, the contractors are still able to submit bids which include "known" labor costs in accordance with the Davis-Bacon Act. Additionally, in a state contract enforcement action, laborers are simply seeking to recover the amount of wages contemplated in the contract. Therefore, granting laborers an alternative remedy in certain limited circumstances does not frustrate or undermine the purpose of the Davis-Bacon Act, nor does it impose greater or unexpected labor costs on the contractors.

¶51    Lastly, the contractor discipline provisions in the regulations are not frustrated by our

24

conclusion. There are three primary means of disciplining violating contractors: contract termination, 29 C.F.R. § 5.5(a)(7); withholding or suspension of funds, 29 C.F.R. § 5.9; and debarment, 29 C.F.R. § 5.12. The USAF Contracting Officer unilaterally had the authority to terminate the Contract with ARC upon her determination that ARC had breached its Contract with the Air Force. She also had the unilateral authority to withhold funds from ARC or suspend payments to ARC upon a finding of breach. While she did not have the authority to pursue debarment of ARC and Baer, there was nothing to preclude her from notifying the DOL that the USAF had rendered a determination of violation and a calculation of wages due that has not been appealed by the adversely affected parties. Such notice to DOL by the federal contracting agency would allow the DOL to take any of the regulatorily-authorized steps it considered appropriate toward the violating contractor. **Quite simply, contractors who violate the law remain subject to regulatory discipline, whether or not the instant action goes forward in state court.**

**¶52** Under the circumstances presented here, we hold that a state remedy does not stand as an obstacle to the accomplishment and execution of the Davis-Bacon Act. The Workers have complied with the federal requirements to the extent they were allowed and this additional remedy, in no way, will render it impossible for the other contracting parties to comply with federal requirements. **We therefore conclude that the Davis-Bacon Act does not preempt Workers' right to a state enforcement action under these facts.**

*Private Right of Action*

**¶53** ARC urges us to resolve this case under a "private right of action" analysis. There are cases

in several jurisdictions holding that laborers do not have the right to bring a private action against a contractor under the Davis-Bacon Act, but may only bring a Davis-Bacon wage action vis-à-vis a Miller Act claim. *See*, *United States, etc. v. Capeletti Bros., Inc.* (5th Cir. 1980), 621 F.2d 1309; *Oper. Eng. Health & Welfare v. JWJ Contracting Co.* (9th Cir. 1998), 135 F.3d 671; *Weber v. Heat Control Co.* (3d Cir. 1984), **728 F.2d 599. However, the Seventh Circuit** held that an implied private right of action exists under the Davis-Bacon Act when, as in this case, the express remedies provided by the Act are not available. *McDaniel v. University of Chicago* (7th Cir. 1977), 548 F.2d 689, *cert. denied* (1978), 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (*McDaniel II*). The Seventh Circuit's first decision, reached in *McDaniel v. University of Chicago* (1975), 512 F.2d 583, was vacated by the U.S. Supreme Court, and the matter was remanded back to the Seventh Circuit to be reviewed in light of the Supreme Court's decision in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26. *University Of Chicago v. McDaniel* (1975), 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30. The Seventh Circuit analyzed the *McDaniel* case under the *Cort* test in *McDaniel II* and reached its original decision for a second time. The U.S. Supreme Court subsequently denied cert. *See also, Norling v. Valley Contracting and Pre-Mix* (D.N.D. 1991), 773 F.Supp. 186 and *Stampco Constr. Co., Inc. v. Guffey* ( Ind. 1991), 572 N.E.2d 510.

¶54    It is significant that the U.S. Supreme Court has considered many Davis-Bacon cases but has specifically declined to resolve the "private right of action" issue. *Universities Research Assn. v. Coutu* (1981), 450 U.S. 754, 769, 101 S.Ct. 1451, 1460, 67 L.Ed.2d 662, 674 ("Similarly, we do not decide whether the Act creates an implied private right of action to enforce a contract that contains

specific Davis-Bacon Act stipulations."). We likewise decline to reach this issue. Rather, because we find preemption inapplicable here, and, in keeping with Montana's longstanding policy and constitutional guarantee in Article II, Section 16 granting citizens access to our courts when they are aggrieved, we hold that under the specific facts of this case, Workers, as third party beneficiaries to the Contracts between the USAF, ARC and Baer, may bring and pursue a state claim to enforce the terms of the Contract.

**¶55    This decision is limited to the named Petitioners/Appellants. There is no proof of class certification and we render no ruling as to other potential claimants. Moreover, inasmuch as Workers' claims for either negligence or for penalties under § 39-3-206, MCA, were not decided by the state court nor raised on appeal, we will not consider those claims here.**

*Summary of Analysis*

¶56    We agree that the Davis-Bacon Act and the accompanying DOL regulations theoretically provide an administrative remedy under which aggrieved parties to a contract incorporating the Act may seek relief. We further agree that the administrative procedure, when available and not otherwise exhausted, must be routinely pursued to its intended conclusion. However, when an administrative remedy is not available or has been exhausted, and the underlying statute and regulations do not preempt state law, the Montana Constitution gives citizens the right to bring grievances to our courts. The Workers have that right in this case.

¶57    We hold that the Workers satisfactorily exhausted their available administrative remedies by obtaining unchallenged, unappealed USAF/DOL rulings, and that the Davis-Bacon Act does not expressly or impliedly preempt this state common law cause of action under these circumstances.

27

We further conclude that the Workers, as third party beneficiaries of the Contract, have the right to sue to enforce that Contract.

¶58    Lastly, we do not disagree with the conclusions reached in Justice Rice's Concurrence. However, having concluded that the Workers had a right to seek a contractual remedy in state court and recognizing that the Workers did not reinstitute their federal action before the Miller Act statute of limitations had expired, we saw no reason to address the rights which might otherwise be available under the Miller Act.

## CONCLUSION

¶59    We hold that the State District Court incorrectly concluded that it lacked subject matter jurisdiction.  Therefore, we reverse and remand to allow the Workers to proceed with their breach of contract action against the defendants.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice Jim Rice specially concurring.

¶60    I concur with the holding of the Court, but do so under a somewhat different rationale. I agree that the District Court has subject matter jurisdiction to adjudicate Workers' state law claims for breach of contract. However, in reaching that conclusion, I believe it necessary to analyze the Miller Act. The Davis-Bacon Act specifically prescribes an available judicial right of action under the Miller Act for the wages at issue here and, therefore, as a Davis-Bacon prescribed remedy, the Miller Act must be considered in properly assessing the rights of Workers herein.

¶61    In addition to the conclusion reached by the majority, I would also conclude that the Miller Act, allowing Workers to sue the contractor and its surety on the bond, as provided for in 40 U.S.C. § 276a-2(b) of the Davis-Bacon Act, is not an exclusive federal remedy and, as such, does not preempt or exclude Workers' breach of contract action under Montana state law.

¶62    Initially, I note that ARC was correct when it argued  that Workers cannot sue in state or federal court *under the Davis-Bacon Act* for violations of the Davis-Bacon Act. Neither the statutes nor regulations prescribe any such remedy. The regulations implementing the Davis-Bacon Act require proactive conduct on the part of the Federal agency (USAF) and the Department of Labor to protect laborers and mechanics working under federal contracts with Davis-Bacon clauses. See 29 C.F.R. §  5.6(a)(3) and (b) (requiring the Federal agency and Department of Labor to initiate investigations to assure compliance with Davis-Bacon contract clauses, inspect payroll data, and to determine the correctness of classifications, giving priority to complaints of alleged violations). In the event of failure or refusal to pay, 29 C.F.R. § 5.9 authorizes the Federal agency to cause the suspension and withholding of funds sufficient to compensate employees for the wages to which

they are entitled. If insufficient funds are subsequently withheld to compensate employees their unpaid wages, there is no remedy to sue *under the Davis-Bacon Act*.

¶63    Rather, 40 U.S.C. § 276a-2(b) of the Davis-Bacon Act provides that "[i]f the accrued payments withheld under the terms of the contract . . . are insufficient to reimburse all the laborers and mechanics with respect to whom there has been a failure to pay the wages required pursuant to this Act, such laborers and mechanics shall have a right of action and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials . . . ." This does not refer to a "private action" under the Davis-Bacon Act, but a right of action by the laborer or mechanic on the contractor's payment bond pursuant to the Miller Act. *See Ybanez v. Anchor Constructors, Inc.* (Tex. Civ. App. 1972), 489 S.W.2d 730, 739. *See also University Research Ass'n Inc., v. Coutu* (1981), 450 U.S. 754, 776-77 & n.28, 101 S.Ct. 1451, 1465 & n.28, 67 L.Ed.2d 662, 679 & n.28.

¶64    Workers were thus correct in arguing that this is not a "private right of action" case, but rather a "preemption" case. As the only "right of action" provided to Workers is a right of action under the Miller Act, the relevant inquiry is whether the federal Miller Act remedy is the exclusive remedy available to Workers when the actions of the Federal agency and Department of Labor under the Davis-Bacon Act fail to provide Workers with sufficient funds to compensate their unpaid wages.

¶65    Creating confusion in this scenario is the question surrounding the exhaustion of administrative dispute resolution procedures and exhaustion of administrative remedies under the Davis-Bacon Act. The "administrative remedy" provided for laborers and mechanics under the Davis-Bacon Act is the withholding of sufficient funds by the Federal agency/Contracting Officer to

reimburse laborers and mechanics their unpaid wages. The laborers and mechanics can initiate such "withholding action" by giving notice of any alleged violations via complaints to the Federal agency. 29 C.F.R. § 5.6(a)(3).

¶66    Upon a Federal agency finding of an actual violation of the Davis-Bacon clauses by the contractor or subcontractor, the Federal agency has authority to cause the suspension of sufficient funds to compensate the laborers and mechanics their unpaid wages. 29 C.F.R. § 5.9. If the Federal agency fails to withhold sufficient funds, the only remaining remedy under the Davis-Bacon Act is a Miller Act action pursuant to 40 U.S.C. § 276a-2(b).

¶67    The administrative procedural prerequisite for an actionable Miller Act claim is that Workers must give notice of the alleged contract clause violations to the Federal agency– the USAF. 29 C.F.R. § 5.6(a)(3). The Davis-Bacon regulations provide no further administrative procedures to be completed on behalf of Workers beyond notification to the Federal agency of the alleged violations.

¶68    For an actionable Miller Act claim, the Davis-Bacon regulations also require no further administrative determination beyond the Federal agency's determination that the contractor or subcontractor is in violation of the Davis-Bacon clauses. In fact, regarding any post-contract violations by the contractor or subcontractor, the regulations provide no option for the laborers and mechanics other than to complain of the alleged violations to the Federal agency, as the regulations contain no provision for the laborers and mechanics to appeal to the Department of Labor. Neither do the regulations require the Department of Labor to make a post-contract determination of prevailing wages and employment classifications subsequent to the Federal agency's proper exercise of post-contract authority in making such determinations.[4]

---

[4] The "contract provisions" in 29 C.F.R. § 5.5, dealing with pre-contract determinations

31

have been interpreted to require further post-contract administrative determinations by the Department of Labor if workers file a complaint alleging underpayment of wages due. *See, e.g., Davis v. Hardaway Contracting Co.* (Ark. 1965), 386 S.W.2d 707. However, such interpretation is incorrect and contrary to a plain reading of the regulations. The contract provisions in 29 C.F.R. § 5.5, requiring classification disputes to be referred to the Department of Labor, refer *only* to disputes regarding predetermination of prevailing wages and classification of workers, occurring prior to letting of the contract. *See University Research Ass'n Inc., v. Coutu* (1981), 450 U.S. 754, n.9, 101 S.Ct. 1451, n.9, 67 L.Ed.2d 662, n.9 ("[t]here is  currently no administrative procedure [under the Davis-Bacon Act] that expressly provides review of a coverage determination after the contract has been let").

¶69    Following Workers' complaint of the alleged violations, the only subsequent administrative determinations essential to an actionable Miller Act claim are a determination of prevailing wages and a determination of the correct classifications for Workers. *See* 40 U.S.C. §§ 276a through 276a-2(b). These determinations cannot be made judicially, as the judiciary has no authority or jurisdiction to determine the correctness of prevailing wages or the correctness of employee wage classifications under the Davis-Bacon Act. *See United States v. Binghamton Constr. Co.* (1954), 347 U.S. 171, 177, 74 S.Ct. 438, 441, 98 L.Ed. 594, 599 ("[t]he correctness of the [Department of Labor's] determination is not open to attack on judicial review").

¶70    Applied to the present situation, the Department of Labor initially exercised its authority, pursuant to 40 U.S.C. § 276a, and determined the prevailing wages and job classifications prior to execution of the contract. The Department of Labor was thus correct when it denied the request by ARC for "new" job classifications, as the Department of Labor had already exercised its "final" authority by its pre-contract determination of prevailing wages, correct job classifications and correct job descriptions. No party to this action disputes these findings and there were thus no disputes of fact or of law to be resolved by the Department of Labor pursuant to 29 C.F.R. § 5.11.

¶71    Secondly, the Federal agency/Contracting Officer, pursuant to 29 C.F.R. § 5.6 (a)(3), determined that Workers were correctly classified, and were, therefore, underpaid. As noted, this determination is within the explicit authority of the Federal agency. In other words, although the Department of Labor is ultimately the final authority regarding determinations of prevailing wages and worker classifications, the Davis-Bacon regulations afford the Federal agency authority to determine proper classification of workers *prior* to entering into the contract, *see* 29 C.F.R. § 5.5(a)(1)(ii)(A) and (B), and authority to determine the correctness of worker classifications

33

*subsequent* to contract formation, *see* 29 C.F.R. § 5.6(a)(3).[5] The latter authority can be exercised by the Federal agency upon its own initiative or after complaints of alleged violations filed by laborers and mechanics.

¶72    The above two administrative determinations by the Department of Labor and the Federal agency, as correctly noted by the majority, fully exhausted all administrative procedures and the administrative dispute resolution process. The result–that Workers were not fully reimbursed for unpaid wages–was not a failure of the administrative dispute resolution process as the Court here

---

[5] Some case law from other jurisdictions hold otherwise, that generally all disputes must be resolved by the Department of Labor. Such case law is based upon misapplication of precedent. *See, e.g.*, *United States ex. rel Windsor v. DynCorp, Inc.* (E.D. Va. 1995), 895 F.Supp. 844. Relying on *Coutu* and failing to distinguish between pre- and post-contract determination by the Department of Labor, the *DynCorp* court concluded that classification disputes *must* be referred to the Department of Labor. As noted above in footnote 1, however, the *Coutu* court explicitly distinguished between pre- and post-contract determinations and specifically noted that the regulations contain no administrative procedure that expressly provides review of a coverage determination after the contract has been let.

finds. To the contrary, there were no disputes to be administratively resolved and the process worked as intended.[6]

¶73    With the successful completion of the administrative process, it having been properly determined that the accrued payments withheld were insufficient to reimburse Workers for unpaid wages according to their correct classifications, Workers were free to exercise the final federal remedy provided by 40 U.S.C. § 276a-2(b) of the Davis-Bacon Act: a judicial right of action by Workers against the contractor and its surety on the bond pursuant to the Miller Act.

¶74    A necessary question before this Court, therefore, is whether the federal Miller Act remedy is intended to be the exclusive remedy available to Workers or whether Workers may, in the alternative, avail themselves to available Montana state law remedies.

¶75    The United States Courts of Appeals for the Second, Fifth, Ninth and Tenth Circuits have considered the issue of whether the federal Miller Act provides an exclusive remedy to laborers and mechanics, and these Courts of Appeals have concluded that it does not. *See United States v. Reid & Gary Strickland Co.* (5th Cir. 1999), 161 F.3d 915, 919; *Wright v. United States Postal Service* (9th Cir. 1994) 29 F.3d 1426, 1431; *K-W Industries v. National Surety Corp.* (9th Cir. 1988), 855 F.2d

---

[6] Pursuant to 29 C.F.R. § 5.7(a)(2), it is the sole responsibility of the Federal agency to report any violations by the contractor or subcontractor to the Department of Labor. However, a failure of the Federal agency to do so has no repercussions on the rights of the complaining laborers and mechanics to receive unpaid wages or to pursue their right of action under the Miller Act, nor does the failure of the Federal agency to submit its mandatory report, as apparently occurred in the present situation, imply that the laborers or mechanics must somehow supplement such inaction by notifying the Department of Labor of the Federal agency's findings.

640, 643; *Active Fire Sprinkler Corp. v. United States Postal Service* (2nd Cir. 1987), 811 F.2d 747, 754; *United States v. Ins. Co. of North America* (10th Cir. 1982), 695 F.2d 455, 458.

¶76     The Supreme Courts of Nevada and Wisconsin have likewise held. *See Hoffmeister Cabinets of Nevada, Inc. v. Bivins* (Nev. 1971), 486 P.2d 57, 58; *Voelz v. Milgram Contracting Co.* (Wis. 1956), 75 N.W.2d 305, 306 (holding that the Miller Act is the exclusive remedy only to an action brought "on the bond" and not to some other suit not based on the bond directly).

¶77     Similarly, the United States District Courts in California, Texas and Massachusetts are in agreement. *See United States v. Wausau Insurance Cos.* (E.D. Cal. 1991), 755 F.Supp. 906, 909; *Alvarez v. Insurance Co. of North America* (N.D. Cal. 1987), 667 F.Supp. 689, 693-95; *United States v. Robert E. McKee, Inc.* (N.D. Tex. 1988), 702 F.Supp. 1298, 1302; *United States v. Sovereign Constr. Co.* (D. Mass.), 311 F.Supp. 371, 372.

¶78     Finally, in another important ruling, the Eighth Circuit Court of Appeals has held that the Davis-Bacon and Miller Acts have different and independent aims, and do not, either explicitly or implicitly, limit one another. *See United States v. W.H. Cates Constr. Co. Inc.* (8th Cir. 1992), 972 F.2d 987, 992.

¶79     I would likewise conclude that the Miller Act is not the exclusive remedy to Workers in the present situation, subject to any actual frustration by state law remedies of the purposes or goals of either the Miller Act or the Davis-Bacon Act. A breach of contract remedy under Montana state law, however, does not frustrate or impede the goal of the Miller Act to create a substitute lien via right of bond action against a surety. In both a Miller Act action or breach of contract action, Workers are provided with a remedy to receive unpaid wages which are due. Based on the foregoing, I conclude that workers are free to pursue their state law claims for breach of contract.

¶80     For the above reasons, I concur with the result reached by the majority and also conclude that the Miller Act remedy, provided in 40 U.S.C. § 276a-2(b) of the Davis-Bacon Act, is not the exclusive remedy to Workers in this case, but that Workers are free to pursue their breach of contract action under Montana state law.

/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.

¶81    I concur with the result of the majority Opinion and with much of what is said in that Opinion. However, I also conclude that the majority has unnecessarily and, contrary to our prior decisional law, limited the effect of its Opinion, thereby depriving other aggrieved workers of its benefit. From those limitations placed on this Opinion, I dissent.

¶82    I agree with what is said in Justice Rice's concurring Opinion except for his conclusion that an employee cannot sue directly to enforce his rights provided by the Davis-Bacon Act. However, I would resolve the issue in this case more directly and without the inference that there was an effective administrative remedy available to the Plaintiffs pursuant to the Davis-Bacon Act.

¶83    As noted by the majority, the contract between American Renovation and Construction Company and the United States Air Force required not only that ARC pay its laborers' prevailing wages pursuant to the Davis-Bacon Act, but also required that ARC require its subcontractors to pay those wages. Assuming the Plaintiffs' allegations to be correct, it did not do so.

¶84    The question in this case was not, as decided by the District Court, whether the Davis-Bacon Act provides a direct cause of action pursuant to the Supreme Court's analysis in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26. (Although I would hold as in *McDaniel v. University of Chicago* (7th Cir. 1977), 548 F.2d 689, *cert. den'd.*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780, (1978), that it does.) The question is whether the Davis-Bacon Act preempts the Plaintiffs' state remedies such as their claims for breach of contract and negligence. I agree with the majority's analysis of the preemption issue with the exception that I would not under any circumstance infer preemption by federal administrative regulations. The question is whether Congress intended preemption of state law. I do not believe comprehensive administrative regulation could ever shed any light on that issue.

38

¶85 I agree with the result of the majority's preemption analysis. However, I would not limit the conclusion that a common law breach of contract action presents no conflict with the statutory and regulatory scheme of the Davis-Bacon Act to the facts of this case as the majority has done in ¶ 48 of its Opinion. I would conclude that a breach of contract action to enforce those protections provided to workers through the Davis-Bacon Act can never conflict with the Act which the majority concedes was enacted to protect workers on federal construction projects. How could allowing workers to enforce their right to prevailing wages conflict with federal law requiring that they be paid prevailing wages? It seems to me the majority's analysis in that regard is unnecessarily complicated and the majority's conclusion is unnecessarily limited.

¶86 Nor do I join in the majority's conclusion at ¶ 33 that Baer and ARC are estopped from arguing that the Plaintiffs failed to exhaust their administrative remedies. I would simply conclude that there were no effective administrative remedies available to the Plaintiffs nor, other than the practical limitations pointed out by Justice Rice (regarding DOL determination of the proper job classification and prevailing wage), is there any requirement in our prior case law that people protected by a federal statutory scheme exhaust that statutory remedy before pursuing an independent state remedy. For the same reason, I disagree with the majority's conclusion in ¶ 35 that the Plaintiffs in this case had an obligation to make their complaints to the contractor, subcontractor, contracting agency or Department of Labor before bringing a state law action for breach of contract or negligence. While common sense and practicality suggest that those efforts first be made, there is nothing in the law that requires it.

¶87 Finally, I strongly disagree with the majority's conclusions in ¶ 56 of the majority Opinion that the Davis-Bacon Act and DOL regulations provide workers an effective remedy for contract violations or that the administrative remedy must be pursued to its intended conclusion. The first

39

conclusion is completely inconsistent with the majority's observations in ¶ 26 and ¶ 29 of its Opinion that only the DOL, contracting agency or private contractor can initiate dispute resolution proceedings regarding the payment of prevailing wages. A regulatory scheme which leaves the rights of workers totally up to federal agencies and their private contractors is no remedy whatsoever to a worker who has been denied his or her prevailing wage.

¶88 Finally, once the Court has considered whether the Davis-Bacon Act preempts state law claims, I would conclude it is only necessary to look to our prior case law to determine whether Plaintiffs' claims in this case were properly dismissed. We have already decided this identical issue in *State ex rel. Farm Credit Bank of Spokane v. Dist. Court of Third Jud. Dist.* (1994), 267 Mont. 1, 881 P.2d 594. However, the *Farm Credit* decision is not even mentioned in either the majority Opinion or Justice Rice's concurring Opinion.

¶89 In *Farm Credit*, the Plaintiffs filed a state law claim for damages from Farm Credit Bank of Spokane. Among their claims, Plaintiffs alleged that the Bank breached its contract with them by not complying with the Agricultural Credit Act of 1987, the terms of which were incorporated into the contract between the parties. The District Court dismissed the Plaintiffs' breach of contract claim based on preemption by the Agricultural Credit Act. On appeal, the Bank contended, as does the Defendant in this case, that the District Court should be affirmed because, based on federal authority, there is no direct cause of action available to a borrower for enforcement of the terms of the Agricultural Credit Act. Plaintiffs, on the other hand, pointed out that they were not relying on the creation of a private cause of action to enforce the Agricultural Credit Act. They simply sought to enforce those provisions of the Act which had been incorporated in the terms of their contract with the Bank.

¶90 In *Farm Credit*, we first held, as the majority does in this case, that it is not necessary to

analyze whether Congress intended to permit a private right of action to enforce the Act. We held that:

> By including reference to the Act as a controlling contract term, the FCB is bound by the terms of the Act under the contract, and the Graveleys have the same right to enforce the provisions of the Act as the parties have to enforce any other provision in the contract.

*Farm Credit*, 267 Mont. at 17, 881 P.2d at 603.

¶91    We pointed out that "while the existence of a private cause of action is correctly analyzed under *Cort v. Ash*, federal preemption is analyzed differently." *Farm Credit*, 267 Mont. at 17, 881 P.2d at 603. Based on the same analytical process employed by the majority in this case, we concluded that not only was there no conflict between the private cause of action and the Act, but that the private cause of action furthered the purpose of the federal legislation. In relevant language, we stated:

> There is no basis for concluding that simply because Congress provided for a minimum procedure for reviewing a loan officer's decision that it meant to foreclose any other method of enforcing the right to restructure provided for by statute.

*Farm Credit*, 267 Mont. at 20, 881 P.2d at 605.

¶92    We concluded that because the terms of the Act were incorporated by the parties as a term of their contract, those terms were as enforceable in a court of law as any other contract term. *Farm Credit*, 267 Mont. at 20-21, 881 P.2d at 606.

¶93    If a minimum procedure for reviewing a loan officer's decision does not foreclose other methods of enforcing rights provided for by contract, certainly the administrative process alluded to by the majority would not foreclose the Plaintiffs' claim in this case. In this case, Plaintiffs did not even have a right to initiate a fact finding process by which to resolve their claim that they were denied the prevailing wage for their job classification.

¶94    For these reasons, and based on our prior decision in *Farm Credit*, I would reverse the

41

judgment of the District Court and I concur in the majority's decision to do so. However, I dissent from the majority's unnecessary and legally incorrect limitations on the application of its Opinion. I believe that the majority's limiting language will lead to confusion by future litigants and leave the door open for future avoidance of what should have been a simple and unequivocal conclusion in this case.

/S/ TERRY N. TRIEWEILER